UNITED STATES, Appellee

v.

MARY G. LONG, and EDNA H. WHITEMAN, Sergeants First Class,
and EDITH M. BROWN, JULIETTE V. MENTE, GRACE
L. MORTON, and MARJORIE L. STUCK, Sergeants,
U. S. Army, Appellants

2 USCMA 60, 6 CMR 60

No. 464

Decided December 3, 1952

William J. Hughes, Jr., Esq., and 1ST LT. John D. Calamari, U. S. Army, for Appellants.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Petitioners were tried jointly by general court-martial upon two charges alleging violations of certain articles of the Uniform Code of Military Justice. The specifications thereunder charge the commission, jointly and in pursuance of a common intent, of (1) an assault upon Pfc Carol A. Kierce, contrary to Article 128, Uniform Code of Military Justice, 50 U.S. C. § 722, and (2) a violation of Article 134 of the Code, 50 U.S.C. § 728, by committing an assault upon Pfc. Kierce on account of her having previously attended and testified at a summary court-martial. They pleaded not guilty but were found guilty of the offenses charged, with certain substitutions in the wording of the specifications. The findings and sentences were approved by the convening authority and, with amendments as to the periods of confinement, affirmed

by the board of review. The Judge Advocate General, United States Army, remitted portions of the sentences imposed upon three of the petitioners, and this Court granted the petition for a review of their convictions.

## I

The errors asserted to reverse the findings and sentences raise only questions of law so we do not relate in detail all of the facts involved. Suffice it to say they are sufficient to sustain the findings. Those necessary to an intelligent presentation of the legal issues are: The petitioners were all noncommissioned officers of the WAC Detachment, 101st Airborne Division, U. S. Army, stationed at Camp Breckinridge, Kentucky. To avoid repetition we shall, for the most part, refer to the parties by their last names. At approximately 2:00 p.m., on October 4, 1951, Kierce, the victim, a member of that detachment, was called as a Government witness in a summary court-martial proceeding involving one Corporal Menusan. As a result of those proceedings, the corporal was found guilty of assault and battery, reduced to the lowest enlisted grade, and fined $25.00. Shortly after 6 o'clock on the evening of the same day one of the petitioners, Sergeant Mente, invited Kierce to go with her for a drink of beer. The invitation was accepted and they left camp in Mente's station wagon. Prior to their departure, Mente, in the presence of Kierce, told Sergeants Brown and Stuck, two of the other petitioners, that she would see them later. Kierce expressed apprehension over the prospect of meeting the other parties, but received assurances from Mente that trouble would not develop. Mente and Kierce drove to the Silvertone Bar, where they each had one drink of beer. After leaving there, they drove to the Highway Inn, where Mente left Kierce in the car with the motor running while she went into the inn. After a short period of time Mente returned to the car accompanied by the other five petitioners. The group loaded in the station wagon and returned to the Silvertone Bar where Kierce and Mente went in and purchased another drink of beer. While there Kierce again expressed fears concerning her safety and told Mente that she was going to call a cab and go back to camp. She did not do so because of receiving information that she could not make a long distance call from that place. In addition, Mente replied, "I brought you out, and I am going to take you back." They rejoined the others in the station wagon and then drove to Uniontown. They were unsuccessful in finding a parking place; however, they stopped for a short period of time. While the car was double-parked Kierce tried to get out but she was physically restrained by another of the petitioners, Sergeant Morton. The car was then driven from Uniontown to a secluded area near the Ohio River. The party arrived there at approximately 8 o'clock in the evening. All parties dismounted from the car excepting Kierce, who was told by Mente to remain seated in the front seat. All of the petitioners were standing close together by the car when Sergeants Morton and Whiteman started cursing Kierce and talking about Menusan's court-martial and all joined in the discussions. The substance of the conversation concerned the unfair conduct of Kierce in causing Menusan to be reduced to the grade of Private after Menusan had worked so hard for her promotion. Subsequently, Whiteman and Morton ordered Kierce from the car and Mente approached and slapped her five or six times, stating that it was for Kierce's own good. After that Morton beat Kierce about the face and after Kierce had fallen she kicked and abused her. Kierce received a rather substantial beating and at one time during the melee, which was of some duration, Stuck suggested they throw Kierce into the river, but Brown objected stating it was too cold.

After the beating was administered, the group left the river area to return to camp. At the Highway Inn, Mente obtained some ice which was applied to Kierce's face; the blood was washed from her mouth and face; and the parties returned to camp, arriving at

**63**

approximately 11:00 p.m. Stuck and Mente took Kierce to her room, and Stuck told her to get into bed or she would hit her again. After Stuck and Mente left, Kierce reported the events to the commanding officer and the military police. At that time her face was swollen, there was a cut on her lip and she was hysterical. The medical officer who examined her stated that she was suffering from contusions; that her lip was cut and swollen; that her face was covered with blood; and that the injuries had been recently inflicted.

On this review petitioners assert four principal contentions: (1) that a summary court-martial is not a court of the United States within the meaning of the statute quoted in the second charge; (2) that incomplete instructions were given on the offense alleged in the second charge; (3) that the law of conspiracy was not applicable in the present case and the instructions thereon were prejudicial; and (4) that the law officer committed prejudicial error in refusing to allow defense counsel to cross-examine the prosecution witness Kierce as to alleged immoral acts committed by her. We shall discuss the contentions in the order stated.

## II

The specification under Charge II is as follows:

"In that . . . [the petitioners] . . . acting jointly and in pursuance of a common intent, did, at or near Camp Breckinridge, Kentucky, on or about 4 October 1951, violate Title 18, Section 241, United States Code (March 4, 1909, Chapter 321, Section 135, 35 Statutes 1113; June 8, 1945, Chapter 178, Section 1; 59 Statutes 234), *as amended by Section 1503, Chapter 73, Supplement IV to the 1946 Code* a statute of the United States of America, of unlimited application, by committing an assault and battery upon Private First Class Carol A. Kierce, on account of her having previously attended and testified as a witness in a court of the United States, namely a Summary Court Martial. [Italicized portion identifies the amendment made by the court-martial in its finding.]

The section of the United States Code referred to in the above specification provides as follows:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . or injures any party or witness in his person or property on account of his attending or having attended such court . . . or on account of his testifying or having testified to any matter pending therein, . . . or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Counsel for petitioners argue that the specification as drawn alleges a violation of a provision of the United States Code, supra; that each of the elements under that statute must be proved; that military courts are not enumerated in the above-quoted section; that one element is missing in that the action of the petitioners must constitute an injury to a witness who has testified in a matter pending before a "court of the United States"; that a summary court-martial is not such a court since it is not listed in Title 28, Section 451, United States Code, which defines the phrase "court of the United States"; and, hence, an assault upon a witness who had appeared and testified before a summary court-martial is not a violation of that statute.

We have no doubt that one of the principal purposes of the penal provision contained in Title 18, Section 241, as amended by Section 1503, supra, is to afford protection to witnesses who appear before Federal tribunals and that this protection could, by statutory construction, be extended to cover those individuals testifying before military tribunals. However, in

view of the fact that petitioners are subject to the Code and are covered by the present enactment, we need not concern ourselves with deciding the question of whether military courts are encompassed within the phrase "court of the United States."

The argument advanced by appellate defense counsel ignores the nature of the crime charged. Here, it is alleged as a violation of the Uniform Code of Military Justice, Article 134, supra, which provides:

"Though not specifically mentioned in this code, [1] all disorders and neglects to the prejudice of good order and discipline of the armed forces, [2] all conduct of a nature to bring discredit upon the armed forces, and [3] crimes and offenses not capital, of which persons subject to this code may be guilty, shall be taken cognizance of by a general or special or summary court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."

That article is the general article of the Code, and it encompasses within its scope three classes of offenses: (1) disorders and neglects to the prejudice of good order and discipline of the armed forces; (2) conduct of a nature to bring discredit upon the armed forces; and (3) crimes and offenses not capital, of which persons subject to this Code may be guilty. In United States v. Snyder (No. 409), 1 US CMA 423, 4 CMR 15, decided June 5, 1952, and United States v. Messenger (No. 310), 2 USCMA 21, 6 CMR 21, decided October 6, 1952, we discussed the three separate clauses contained in Article 134, supra, and applied them to the various types of offenses they prescribe.

Counsel for petitioners have assumed that the offense charged in the specification must be limited to clause (3) of Article 134, as a "crime or offense not capital"; and that in construing the specification and determining the elements to be established we must be controlled by the Federal statute and the holdings of the Federal civilian courts. We do not accept this argument. We are of the opinion that crimes and offenses not capital, as defined by Federal statutes, may be properly tried as offenses under clause (3) of Article 134, but that if the facts do not prove every element of the crime set out in the criminal statutes, yet meet the requirements of clause (1) or (2), they may be alleged, prosecuted and established under one of those. Clearly, if the acts and conduct complained of are disorders to the prejudice of good order and discipline in the armed forces, the fact that they do not establish a civilian offense does not prevent prosecution by the military. The essence of the offense denounced by the specification of Charge II is the obstruction or interference with the administration of justice in the military system. Clause (1) covers that type of disorder. Courts-martial, summary, special and general, are an inherent and important part of the military judicial system. They are the tribunals which administer military justice and it is most important to the good order and discipline of the armed services that they, in no way, be influenced improperly by any means, including intimidation of witnesses. Congress has expressly made it an offense to attempt to influence a court-martial, and while tampering with, or intimidation of, witnesses is not specifically mentioned, it is axiomatic that courts-martial would be unduly hampered and influenced adversely if witnesses were not free to testify without fear of molestation. We can hardly imagine how a judicial system, civilian or military, could perform its functions properly if witnesses had to testify with knowledge that the courts could not offer some degree of protection from physical abuses administered by those who felt offended. If the statutory provisions prohibiting the abuse of witnesses are necessary to the successful operation of civilian courts, some similar deterrent is necessary in the military system. Article 134 of the Uni-

form Code of Military Justice, supra, supplies that.

Our holding on the first contention requires that we dispose of an ancillary assertion concerning the legal effect of alleging the offense as a violation of the Federal statute. As previously indicated, an offense under Article 134, Uniform Code of Military Justice, supra, is proven without regard to whether a summary court is included within the terms of that statute. By the same reasoning, an offense may be alleged under clause (1) of Article 134 without the necessity of relying on the violation of a particular statute. The phrase in the specification which states "violate ▮ Title 18, Section 241, United States Code (March 4, 1909, Chapter 321, Section 135, 35 Statutes 1113; June 8, 1945, Chapter 178, Section 1; 59 Statutes 234), as amended by Section 1503, Chapter 73, Supplement IV to the 1946 code, a statute of the United States of America," may be deleted and a substantive offense contrary to Article 134 is sufficiently alleged. The quoted clause may, therefore, be considered redundant and unnecessary.

The rule in civilian and military courts has long been that, if an offense is otherwise fully ▮ stated in an indictment or specification, an unnecessary reference to a statute is surplusage and does not render the particular pleading invalid. Generally speaking, the rule is that if any fact is alleged in a specification which is not a necessary ingredient of the offense, it may be considered as redundant. If, therefore, we strike the unnecessary reference to the statute, the specification reads in substance that the petitioners on or about the 4th day of October 1951, at or near Camp Breckinridge, Kentucky, acting jointly and in pursuance of a common intent, did commit an assault and battery upon Private First Class Carol A. Kierce, on account of her having previously attended and testified as a witness before a summary court-martial. It is thus apparent that the specification with

the phrase deleted states every necessary element to establish an offense as defined by Article 134, supra.

A similar question was considered by an Army Board of Review in the case of United States v. McDonald, 10 BR 61, 63. In that case one of the specifications alleged that the accused violated the 96th Article of War by unlawfully and feloniously having carnal knowledge of a female under the age of sixteen years in violation of Section 458, Title 18, United States Code. In the trial it developed that the offense was committed at a place where the United States Code did not apply and one of the questions presented was the effect of having alleged the offense as a violation of the particular Federal statute. The board of review concluded that the specification alleged an offense under the 96th Article of War (now Article 134, Uniform Code of Military Justice, supra) for the reason that the acts pleaded would, if established, bring discredit upon the military service. Specifically, the board pointed out that pleading the Federal statute was error, but harmless in that it constituted mere surplusage.

In holding as we do, we have not overlooked the rule that an accused must be informed of the exact nature of the charge against which he must defend himself. While a specification need not possess the niceties of an indictment at common law, it must fairly apprise the accused of the offense charged so that he may not be misled in the preparation of his defense. Here there is no violation of that rule. The charge designates the particular military offense complained of and the article of the Code allegedly violated. The specification sets forth the particular acts or omissions of the petitioners which form the legal constituents of the offense. We find nothing in this record which would indicate that, with or without the reference to the Federal statute, petitioners could have been prejudiced in the preparation of their defense. They were fully apprised of the nature of the accusation, the facts they would

be compelled to meet, and particularly that conduct to the prejudice of good order and discipline of the armed forces would be the foundation to support the charge. The offense having been distinctly and fully described, and the petitoners having had a fair opportunity to meet the issue, we find no prejudice.

### III

It is next contended that the law officer committed prejudicial error by failing to give adequate instructions on the offense alleged under Charge II. Most of counsel's assertions deal with a failure of the law officer to instruct on the requisites of the Federal statute but these necessarily fail because of our holding on the first contention. However, we shall express our views on the sufficiency of the instructions in the light of that holding. The law officer gave extensive instructions on almost every conceivable question of law. He dealt with assault and infliction of bodily harm, under Charge I, and then proceeded to instruct on the elements of Charge II. In substance he instructed that to find the petitioners guilty under Charge II, the court-martial must find that they, acting jointly and pursuant to a common intent, committed an assault and battery upon Private First Class Kierce because of her having appeared and testified as a witness before a summary court-martial. So that there will be no misunderstanding as to how we reached this conclusion, we set up the sequence of events and the manner in which the elements of the offense were called to the attention of the court-martial members. The specification not only alleged a violation of the Federal statute, it expressly alleged the manner in which the Federal act had been breached; namely, by committing an assault upon a person for having appeared and testified before a summary court-martial. After the trial commenced, just prior to the taking of testimony, trial counsel read into the record that portion of the Federal statute which made it an offense to injure anyone on account of his having testified to any matter pending before the court. During the course of the trial, the statute was introduced into evidence and each member of the court was furnished with a copy. It subsequently developed that the act had been amended, the amendment was specifically called to the attention of the members of the court-martial and it formed the basis of the substitution in the finding. During the arguments before the court, counsel for the accused and for the Government stressed the necessity of the court-martial finding that the assault and battery was committed because the victim had appeared as a witness to testify against Corporal Menusan.

Cast in that procedural and factual background, the particular instructions on the specification involved clearly emphasizes the essential elements of the offense. It was as follows:

"That the six accused acting jointly and in pursuant [sic] to a common intent did commit an assault and battery upon Pfc Kierce; the facts and circumstances of the case at the time of the assault showing that the assault and battery was committed for the reason alleged, in violation of Federal law."

The only reason alleged in the specification upon which a finding could be predicated was that Kierce had appeared as a witness before a court-martial. To base a finding on the Federal act would involve the same reason. The instruction cannot be construed otherwise. In the final analysis, it might be argued that the law officer placed a greater burden upon the Government than it needed to carry. The court-martial need only find that the assault and battery was administered because of Kierce's appearance as a witness but the law officer added the additional finding that it was necessary for the court to find the acts were in violation of the Federal law. If the instruction was erroneous for that reason, petitioners are in no position to complain. Be that as it may, by any fair interpretation of the instruction, the essential elements of

**67**

the offense were clearly spelled out and the court could not reasonably be misled. Furthermore, this was a carefully and well-tried case. Counsel for petitioners were diligent, submitted a number of requests for instruction and all, with the possible exception of one, were given. The law officer had written instructions and adequate opportunity was afforded all counsel to know the exact language used and to suggest amplifications, modifications, or additions. All at the trial level seemed to believe the law officer had instructed adequately and clearly. Upon interrogation each counsel announced he had nothing further to suggest. There were no representations made to the law officer that instructions were incomplete or confusing and no objections or exceptions were taken. We are certain that the court-martial members understood the instructions and knew and were required to find every essential element of the offense. We, therefore, conclude that petitioners' second contention must be overruled.

## IV

In his charge to the court-martial the law officer included certain instructions dealing in part with co-conspirators and in part with co-actors. Appellate defense counsel contend on appeal that he committed prejudicial error in referring to the former. The particular instructions complained of, for the most part, set forth principles controlling the legal effect of evidence when a conspiracy has been established. Here, the accused were charged with "acting jointly and in pursuance of a common intent." Generally, the rule for the admission of evidence against co-actors is substantially the same as that applied in cases involving co-conspirators. Wharton, Criminal Evidence, 11th ed., Section 699, page 1183, states:

"Where several persons are proved to have unlawfully conspired to commit a crime, the acts and declarations of any conspirator pending such conspiracy, and in furtherance thereof, are admissible as substantive evidence against any co-conspirator on trial. The same rule is applicable and the same principles control in the case of an unlawful combination of persons though not necessarily a conspiracy. That is, persons may not conspire to commit a crime, or the prosecution may be unable to prove a conspiracy, but yet the evidence adduced may show that the persons involved in a crime were acting in concert in the commission of the crime charged. In such case, then, the rule applies that where several persons are proved to have acted in concert in the commission of a crime, and have thus combined for the same unlawful purpose, the acts and declarations of the one co-actor in pursuance of the common act or design are admissible against any other co-actor on trial for the crime. When once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent to, or command, what is said or done by anyone in furtherance of the common object. . . ."

The record affirmatively shows that the law officer gave the instructions requested by individual counsel for the petitioner. It does not, however, show whether these particular instructions were given in response to a request. Assuming without deciding that they were not, they do not incorrectly state the law and counsel does not so contend. The most that is asserted is that the instructions were confusing. Our review of the record causes us to conclude differently. Conceding that the law officer may have belabored the importance of the problem, the evidence would have permitted the courts-martial to find a conspiracy, had it been alleged. The law officer was faced with a problem of informing the court on the legal effect of testimony, acts, conduct and statements of co-actors. For the purpose of disposing of the contention, we may concede that the instructions

could have been better tailored to meet the particular status of petitioners, but the principles of law being advanced were expressed in language with sufficient clarity that we are satisfied the court-martial members were not misled in evaluating the evidence as it applied to each petitioner.

Again, this contention did not concern counsel at the trial level. As previously stated, after ▮ completing his instructions, the law officer announced that he had covered all the essential elements of the offenses and had given all the instructions requested by counsel. He thereupon asked whether there was anything further from any of the counsel representing the petitioners and each replied there was not. If at any time counsel believed the instructions on conspiracy were unnecessary, tended to confuse or were not substantially correct, they should have directed attention to that fact. Not having done so, appellate defense counsel may not successfully complain on appeal, particularly, when the essence of the contention is lack of clarity.

## V

During the course of the cross-examination of Pfc Kierce, defense counsel asked whether she ▮ had ever been on her bed under blankets with another WAC. The law officer ruled that the question was improper. Defense counsel requested that they be allowed to argue the question out of the hearing of the court. This request was granted and arguments on the question propounded and others of similar import were presented to the law officer. After the court had reconvened, the law officer ruled that the question was improper since it called for an answer which would not furnish information material in determining the veracity of the witness. Thereafter, defense counsel asked whether appellants Brown and Stuck had reported the witness for an act of misconduct, and the law officer stated that the defense would have to be more specific as to the date of such occurrence. Counsel rephrased the question and the witness replied that she knew nothing about such report. Counsel then abandoned this line of cross-examination. Appellate defense counsel now contend that the ruling of the law officer upon the question asked by counsel unduly restricted the cross-examination of Kierce, and prejudiced the rights of petitioners.

Reasonable cross-examination of witnesses by the opposing party as to the facts relevant to the issues including credibility is a matter of right. The principle, as applied in military tribunals, is stated in the Manual for Courts-Martial, United States, 1951, paragraph 149b(1), pages 279–280, as follows:

"The extent of cross-examination with respect to a legitimate subject of inquiry is within the sound discretion of the court. No obligation is imposed upon the court to protect a witness, whatever his rank, office, or station in life, from being discredited upon cross-examination, so long as the interrogation falls short of an attempted invasion of his right not to incriminate himself, properly invoked. The witness should, however, be protected from questions which go beyond the bounds of proper cross-examination merely to harass, annoy, or humiliate him. On the question of his credibility and within the limits imposed by the privilege against self-incrimination a witness may be cross-examined as to any matter touching upon his worthiness of belief, including (unless the court in its discretion decides that the relationship of the particular matter to the credibility of the witness is too remote) his relation to the parties and to the subject matter of the case, his interest, motives, and inclinations, his way of life, affiliations, associations, acts of misconduct, habits, and prejudices, his means of obtaining a correct and certain knowledge of the facts about which he testifies and the manner in which he has used those means, his powers of discernment, memory and description, and his physical

69

defects, infirmities, and mental idiosyncrasies."

As suggested by the Manual, questions on cross-examination aimed at impairing the credibility of the witness should be kept within reasonable and fair limits as to their relevancy on worthiness of belief. Ordinarily these limits are controlled by the discretion of the law officer. We can review an abuse of that discretion but if the rulings are within reasonable bounds then we ought not to override his judgment.

Involved are two questions propounded to test Kierce's credibility. The first concerned an alleged act of misconduct on her part; and the second involved a question as to whether she had been reported by two of the petitioners for alleged misconduct. While an objection was originally sustained to the second question, Kierce was required to answer when counsel properly identified the report as to time and place. Error is therefore absent in that instance. The other question about her being under a blanket was properly rejected if immaterial, irrelevant or too remote to impair her credibility.

The law officer's ruling on the objection made to the first question was that a witness might not be questioned about misconduct unless his acts would tend to impair his veracity; and that if the defense counsel had in mind some specific act or acts which would accomplish that purpose they could cross-examine in that field. Counsel for petitioners did not indicate that they had any misconduct in mind other than suspicious circumstances suggesting homosexual traits and so the law officer ruled that, upon the showing then made, the question was improper.

While the Manual for Courts-Martial, United States, 1951, appears to grant wide latitude to the cross-examiner, it extends to the law officer the right to limit the examination to matters touching on worthiness of belief and to decide whether the subject matter sought to be elicited is too remote. The law officer in his ruling

granted petitioners the right to examine on acts and conduct not usually the subject of cross-examination in Federal courts. The principle adopted in those courts is that, except in certain sex offense cases, acts of misconduct not resulting in a conviction for a felony or for a misdemeanor amounting to *crimen falsi* do not substantially affect the witness' veracity and may not be the subject of questions on cross-examination for purposes of impeachment. In the case of Lennon v. United States, 20 F. 2d 490, which involved a prosecution for the maintenance of a nuisance, the Circuit Court of Appeals, Eighth Circuit, stated:

"Another assignment of error is based upon the ruling of the court in excluding certain testimony. When one of the witnesses for the government was on the stand, he was asked in cross-examination whether, at a certain time, he registered at a hotel with a woman; whether, on another occasion, he had liquor in his possession and attempted to sell the same; and whether, at another time, he was intoxicated and disorderly. To this course of cross-examination the court sustained the objections of counsel for the government. The purpose of the defendant was, of course, to impeach the witness and cast a doubt upon his credibility. Acts of misconduct, not resulting in a conviction of a crime, are not the proper subject of cross-examination to impeach a witness. . . . ."

For the purposes of this case we need not limit the scope of the cross-examination to the same extent as do the Federal courts for here there is no showing that the acts sought to be established amounted to misconduct or that they, in any way, show characteristics that might lessen the likelihood of Kierce's telling the truth. Every departure from the norm of human behavior may not be shown on the pretext that it affects credibility. The question asked by defense counsel carried veiled insinuations of impropriety, but when the law officer afforded him an opportunity to cross-examine

70

on acts of misconduct which would be of sufficient gravity to impair the witness' credibility the matter was not pursued. Had the law officer permitted the fishing expedition to continue without requiring a showing that counsel was seeking an objective, founded on relevant facts, he would have permitted the cross-examiner artfully to impair the credibility of a witness by repeated innuendoes and insinuations rather than by accepted methods of cross-examination. It is not an abuse of discretion to so confine counsel. In so holding, we call attention to the fact that the question has no relevancy in establishing bias or prejudice and revealed no motive on the part of the witness to falsify her testimony. We conclude the law officer did not err in limiting the cross-examination of the witness, Kierce, and the assignment of error is therefore overruled.

## VI

The last question, which must be answered because of our holding on the other issues, involves ▮▮▮▮▮▮ the legality of the sentences. Paragraph 127c of the Manual for Courts-Martial, United States, 1951, in discussing maximum punishments states as follows:

"The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment.

"Offenses not listed in the table, and not included within an offense listed, or not closely related to either, remain punishable as authorized by the United States Code (see, generally, Title 18) or the Code of the District of Columbia, whichever prescribed punishment is the lesser, or as authorized by the custom of the service. With respect to other matters which properly may be considered in fixing punishment, see 76a, 123, and 154a."

An inspection of the Table of Maximum Punishments discloses that there is no offense listed therein which might be identified as, or closely related to, obstructing justice, the offense herein involved. The Code of the District of Columbia does not define this particular offense nor provide for its punishment. Accordingly, as required by the above-quoted subparagraph, we look to the United States Code to determine whether it furnishes a guide as to an appropriate sentence. Title 18, Paragraph 1503, United States Code, dealing with obstructing justice, and which is the paragraph referred to in the specification, provides that whoever injures any party or witness in his person or property on account of his attending or having attended and testified in any court of the United States, shall be fined not more than $5,000 or imprisoned for five years, or both.

Title 18, Section 1505, also dealing with the obstruction of justice, provides that whoever injures any party or witness in his person or property on account of his attending or having attended and testified before any department or agency of the United States, shall be fined not more than $5,000 or imprisoned for five years, or both.

It should be apparent from the reading of these two sections that the crime of which these accused were found guilty, is the precise offense prescribed by one of these two sections. If a summary court-martial is not a court within the meaning of Title 18, Section 1503, it is a department or agency within the meaning of Section 1505. For the purpose of punishment, it matters not which it may be as the punishments provided by the United States Code for both offenses are identical. The sentences imposed on the accused are well within the above-mentioned maximum limits and we, therefore, find them to be legal.

**71**

All the assignments of error having been determined contrary to the contentions of petitioners, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

Although I agree with the result reached by the Court, I cannot accede to its disposition of the question of whether a summary court-martial is a "court of the United States" within the meaning of 18 USC § 1503.

The majority holds that the allegation in Specification 2 of a violation of 18 USC § 1503 is mere surplusage which may be stricken, leaving the record, including the sentence, intact. The sentence as adjudged and approved may indeed be sustained under this view, since the offense charged in Specification 2 is not listed in the Table of Maximum Punishments, and is not included within, or closely related to, a listed offense. In this situation, the penalty provided either in Title 18 of the United States Code or in the Code of the District of Columbia applies, as stated in Paragraph 127c of the Manual for Courts-Martial, United States, 1951. Thus the majority finds it unnecessary to decide whether a summary court-martial is a "court of the United States" within the meaning of that statute. However, in striking out the reference in Specification 2 to the Federal statute mentioned, and concluding that the conviction under that specification may stand as a conviction of an offense under the first or second clause of Article 134, 50 USC § 728, the Court, in my opinion, overlooks a course well-charted in opinions of the Federal judiciary which would carry us along the following path—which I think distinctly preferable in that it possesses an element of certainty lacking in the approach of the majority and in the result reached by its members.

At the outset it is necessary to decide whether a summary court-martial is a "court of the United States" within the purview of 18 USC § 1503. Decision of this question does not determine whether *this* Court falls within the ambit of that phrase—an issue as to which existing authorities are inapplicable, and decision of which should be reserved until squarely presented. The authorities appear settled in the view that courts-martial and military commissions are not "courts" in the sense in which that term is customarily used. Ex parte Vallandigham, 1 Wall 243, 68 US 243, 17 L ed 589; Kurtz v. Moffitt, 115 US 487, 500, 29 L ed 458, 6 S Ct 148; In re Vidal, 179 US 126, 127, 45 L ed 118, 21 S Ct 48; Ex parte Richard Quirin, 317 US 1, 39, 87 L ed 3, 63 S Ct 2; Reilly v. Pescor, 156 F2d 632, 635 (CA8th Cir). Further indicative of this conclusion is the fact that in section 2 of the Administrative Procedure Act, 60 Stat 237, as amended, 5 USC § 1001 (a), "courts" *and* "courts martial and military commissions" are separately exempted from that Act's operation.

The provisions of 18 USC § 1503 were intended to protect witnesses in the courts comprising the Federal judiciary. Catrino v. United States, 176 F 2d 884 (CA9th Cir); Broadbent v. United States, 149 F2d 580 (CA10th Cir); Samples v. United States, 121 F 2d 263 (CA5th Cir), cert den 314 US 662. Courts-martial, not being a part of this system, are not within the scope of that statute's operation, and witnesses before courts-martial are not afforded its protection. It follows that the conduct charged against these accused could not have constituted a violation of the Federal statute specified in Specification 2, under which each was tried and convicted.

Does this mean, however, that assaulting a court-martial witness is not proscribed in other Federal legislation of general application—or, stated otherwise, that it can only be charged as a violation of Article 134 of the Uniform Code, supra? I think the proper answer to this question is a negative one—for the reason that the statutory reference in Specification 2 was not a critical and indispensable part of the allegations contained therein. Assimilating the allegations of a military specification of charges to those of an indictment in Federal civilian practice, as was done in Johnson v. Biddle, 12 F2d 366, 369 (CA8th Cir), "The offense laid in

an indictment is charged by the allegations of fact, not by reference to statutes." Martin v. United States, 99 F2d 236, 238 (CA10th Cir). "In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial. He may have conceived the charge under one statute which would not sustain the indictment but it may nevertheless come within the terms of another statute." United States v. Hutcheson, 312 US 219, 229, 85 L ed 788, 61 S Ct 463; see United States v. Schultz (No. 394), 4 CMR 104, decided August 5, 1952. In United States v. Kolodny, 149 F2d 210, 211 (CA2d Cir), the court made it clear that where the conduct charged is concededly forbidden by some statute, the indictment is sufficient without specifying the particular statute under which it was drawn, *or even if it specifies the wrong statute*. Other cases squarely in point are legion. Among them are Williams v. United States, 168 US 382, 389, 42 L ed 509, 18 S Ct 92; Smith v. United States, 145 F2d 643 (CA10th Cir), cert den 323 US 803, 89 L ed 641, 65 S Ct 563; Taylor v. United States, 2 F2d 444, 446 (CA7th Cir); Biskind v. United States, 281 F 47, 49 (CA6th Cir); Maresca v. United States, 277 F 727, 740 (CA2d Cir); Vedin v. United States, 257 F 550, 551 (CA9th Cir); Sugar v. United States, 252 F 79, 84 (CA6th Cir); United States v. Wood, 168 F 438 (DC, NJ); United States v. Doss, 66 F Supp 243 (DC, La), affirmed 158 F2d 95 (CA5th Cir); United States v. Gruenwald, 66 F Supp 223 (DC, Pa); United States v. Crittenden, 24 F Supp (DC, NY). The rationale of the rule enunciated in these authorities is made plain in Note 3, Notes of the Advisory Committee on the Federal Rules of Criminal Procedure, Rule 7(c), Fed Rules Crim Proc—the provision requiring reference in an indictment to the statute under which it is laid. It here appears clearly that the reference in an indictment to the statute underlying it is not in essence a part of the indictment at all. The Note fully explains that the statutory reference required in Rule 7(c), supra, is only for the information of the defendant, and is not calculated to provide a basis for possible dismissal of the indictment or similar purpose.

True, there may be a case where statutory reference may be necessary to a proper understanding of the charge. Martin v. United States, supra. Certainly the present one is not of this nature. The accused here were amply notified by the language of Specification 2 that they were charged with assaulting one Kierce, who had appeared as a witness in court-martial proceedings, because of that appearance and because of her testimony there. The record discloses that their efforts at the trial were directed to meeting the allegations of fact in Specification 2. They could hardly contend with seriousness that they did not and could not understand the charge against them.

It follows that if the conduct of the accused shown to the court-martial violated a Federal statute other than that specified in Specification 2, their convictions of "offenses not capital, of which persons subject to this code may be guilty," may be affirmed under Article 134 of the Uniform Code, supra, even though that other statute was not alleged in the specification. I see no reason to impose on the military in this connection a rule more stringent than that prevailing in the civilian administration of criminal law.

One need not look far from the statute set out in Specification 2—18 USC § 1503—to find another of possible applicability. The provision of 62 Stat 770, 18 USC § 1505, is that whoever injures a witness who has testified "in any proceeding pending before any department or agency of the United States, or in connection with any inquiry or investigation being had by either House, or any committee of either House, or any joint committee of the Congress . . . Shall be fined not more than $5,000 or imprisoned not more than five years, or both." Does a court-martial—a formal inquiry of a judicial nature—constitute a "proceeding pending before any department or agency of the United States"? The following definition of the word "department" is found in 18 USC § 6:

"The term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government."

Turning to 5 USC § 1, we find listed there, as the second Executive Department enumerated, "The Department of Defense." There is established by 5 USC § 171, "within" the Department of Defense, the Departments of the Army, the Navy, and the Air Force. It follows—quite clearly to me—that a court-martial is a proceeding within the jurisdiction and cognizance of the Department of Defense, and that the integrity of such proceeding is within the protection accorded by 18 USC § 1505. The fact that 5 USC § 171 also provides that the Army, Navy, and Air Force shall thereafter be characterized as "military departments in lieu of their prior status as Executive Departments" does not operate to render trial by a court-martial the less a proceeding of the Department of Defense, an Executive Department—this even though the proceeding is being conducted under the immediate aegis of one of the several Armed Services.

I conclude, therefore, that the accused violated the provisions of 18 USC § 1505, and that their convictions of guilt may be affirmed by this Court as having been established under that statute. This result obtains on the basis of authorities cited earlier herein, although Specification 2, under which they were accused, purported to bottom its charge on the proscription of 18 USC USC § 1503. The judgment of conviction should be modified to reflect this conclusion. The maximum sentences provided for 18 USC §§ 1503 and 1505 being identical, an substantially in excess of those affirmed as to each of the accused, there is no necessity for disturbance of the sentence.

As to the remaining arguments raised by petitioners, my views differ from those of the majority perhaps only in form. However, in the interest of completeness, I feel justified in setting them down. With respect to the charge of

the law officer, petitioners raise two objections. First, they attack his failure to instruct with respect to the requisites of the Federal statute. As we have seen, however, it was not the statutory reference in Specification 2 which was the important part of the offense charged. Rather, it was the allegations of fact which were critical. The charge as given clearly instructed the members of the court that to find petitioners guilty they must believe the prosecution to have shown that petitioners had assaulted Private First Class Kierce because of her testimony before a summary court-martial. Reference therein to the Federal statute was wholly unnecessary, for whether the conduct charged constituted a violation of that statute was solely a question of law for the decision of the law officer alone. Being unnecessary, its inclusion cannot be regarded as error in the usual sense, unless somehow it made the charge confusing. There is nothing to indicate that this was the situation here.

Petitioners' second line of attack on the law officer's charge is that he erred to their prejudice by including instructions dealing with co-conspirators, and did not limit himself to the liability of co-actors. The charge against them, of course, was laid not as a conspiracy but as a joint enterprise. This, however, fails to evaluate properly the net effect of the charge. There is but small difference between a criminal conspiracy and a joint enterprise or venture in the commission of crime. In a conspiracy there must be proof of a pre-existing plan or scheme between the conspirators. In the case of a joint enterprise, however, there need be no such proof— the only evidence required being that the accused acted together in the accomplishment of a criminal end. This distinction is important only where it is sought to punish criminal agreement— for there it is necessary, of course, to show that that agreement existed in fact. Here petitioners were charged, not with conspiracy, but with their joint conduct in carrying their criminal object into operation. That the distinction is of no consequence in the present setting is plain. The rule governing

the admissibility of evidence against those acting jointly in furtherance of a preconceived plan, and those acting jointly without proof of such plan, is exactly the same, for the charge against each is based not on their plan, but on their joint action. See Wharton, Criminal Evidence, 11th ed, § 699. As generally stated, the rule is that the acts and declarations of one person engaged in concerted action are admissible against all so engaged. Thus, Mr. Justice Bushrod Washington, in American Fur Co. v. United States, 2 Pet 358, 365, 27 US 358, 7 L ed 450, said, "we hold the law to be, that where two or more persons are associated together for the same illegal purpose, any act or declaration of one of the parties, in reference to the common object, and forming a part of the res gestae, may be given in evidence against the others." Other cases in point are United States v. Gooding, 12 Wheat 460, 25 US 460, 6 L ed 693; Brown v. United States, 150 US 93, 37 L ed 1010, 14 S Ct 37; Davis v. United States, 12 F2d 253 (CA5th Cir); Sasser v. United States, 29 F2d 76 (CA5th Cir); Zarate v. United States, 41 F2d 598 (CA5th Cir), cert den 282 US 867, 75 L ed 766, 51 S Ct 75; Friscia v. United States, 63 F2d 977 (CA5th Cir), cert den 289 US 762, 77 L ed 1505, 53 S Ct 797. Petitioners here were charged with "acting jointly and in pursuance of a common intent." That charge was amply supported by the evidence, so the acts and declarations of each were admissible against all, regardless of the fact that technically they had not been charged as conspirators. The reference to conspiracy by the law officer could, therefore, not have operated to their prejudice.