UNITED STATES, Appellee

v

DON R. NICHOLSON, II, Private E–2, CLIFFORD D.
LOUGHRY, Private E–1, and REGIS F. MARSHALL,
Private E–2, U. S. Army, Appellants,

8 USCMA·499, 25 CMR 3

No. 9444

Decided December 20, 1957

*William O. Beach, Esq.*, argued the cause for Appellants, Accused. With him on the brief were *Colonel James M. Scott, First Lieutenant Bert M. Gross* and *First Lieutenant Jerome H. Gerber.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant A. Kenneth Pye.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The three accused come before us on appeal from the board of review's decision, which affirmed the findings and sentence of their convictions by a general court-martial for rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. Each was sentenced to be dishonorably discharged from the service and to forfeit all pay

and allowances. The court adjudged confinement at hard labor for fifteen years against both Nicholson and Loughry, while Marshall was sentenced to thirteen years.

The events leading to this crime of passion occurred during the early morning hours of November 23, 1955. The victim, a young married woman, employed at a highway snack bar, had waited for her husband to call for her at midnight—the close of her working day. When he did not appear, she started walking toward her home. The three accused were cruising along the highway in a borrowed car. They noticed her, and offered her a ride which she refused. She was grabbed by the wrist and forced into the car. After driving a short distance, they turned into a secluded spot and indicated their intentions toward her. Upon feigning illness, she was permitted certain freedom of action which enabled her to escape from the car. Loughry and Nicholson overtook her and Nicholson hit her at least twice in the face with sufficient force to cause her nose to bleed. They dragged her back to the car where she was placed in the back seat and forced into a prone position. Each accused then raped her. They then drove to a service station where they purchased gas. While at the station, the victim was seen sitting in the rear of the car between Marshall and Loughry. She made no outcry. They proceeded to another area where she was again raped by each accused. Upon being released, she returned to her home and informed her husband, who notified the military police.

The three accused conceded the victim's testimony concerning the acts of intercourse, but vigorously maintained that such acts were performed with her consent. The accused, Nicholson, testified at great length and in great detail concerning the events which occurred on the night in question. He admitted having struck the girl in the face after she had attempted to run away, but claimed that he had done so only in an effort to "calm her down" because she had become uncontrollably hysterical. He also testified that he had warned her before stopping at the gas station about making "any trouble" which might embarrass him.

Marshall and Loughry testified in less detail, electing instead to "adopt the same testimony that Nicholson has presented here today," except as to certain evidence which applied particularly to them. Before this Court, the three accused, as they did below, urged several errors respecting the latitude of questioning and cross-examination of witnesses and the accused, Nicholson. We limited our grant of review to the following issues:

1. Did the law officer commit prejudicial error when over objection he permitted trial counsel to cross-examine the accused as to other specific acts of misconduct?

2. Did the law officer commit prejudicial error when he permitted trial counsel to introduce extrinsic evidence in rebuttal, tending to show the accused (Nicholson) had been guilty of other specific acts of misconduct?

After the accused, Nicholson, had testified on direct examination, the trial counsel entered upon an extensive cross-examination in the course of which the following question was asked:

"Q. Nicholson, as a matter of fact, on the 23rd of January 1956—that's this year—you and a man by the name of McRea and Kendrick, all in self locked tents, Post Stockade here at Fort Campbell, Kentucky, tried to create a riot. Is that not true?"

Defense counsel immediately objected and an out-of-court hearing was held. When the court reopened, trial counsel was permitted to proceed with the line of questioning after the law officer advised the accused of his rights under Article 31. The question was again asked, but before the accused could answer, defense counsel requested an instruction concerning "the purpose of this line of questioning and how they [the court] are to consider it." The law officer stated that he would so instruct after the answer was given. The accused thereupon answered the question in the following manner:

"As I understand the question, the question is: 'Did Kendrick, McRea and I try to create a riot?'—at the Post Stockade on this particular date? I would say that at no time did I knowingly try to create a riot. On this particular date I did hear a plan—some man in Cell 10—that there would be a fight in the Mess Hall. This was not planned in order to create a riot and it was not my plan."

The law officer thereupon instructed the court as follows:

"The court is instructed that the question by the Prosecution and the answer by Private Nicholson, the witness is not to be considered, in any way, affecting his guilt or innocence of the offense to which he has testified or to the offense for which he is on trial today but is to be considered only as to affecting his credibility as a witness. It is the general rule of law and I will further instruct you later, that a witness may be impeached by showing a conviction of a felony and it is a further rule of law that a witness may also be questioned about acts of misconduct, if the court feels that those acts of misconduct would affect his credibility. That's the sole purpose of allowing the last question and answer. Proceed."

Trial counsel further pursued this line of questioning regarding the stockade disturbance. In answer to specific questions the accused testified that he had in no way created a disturbance or planned a riot with any other inmates, although admitting that "most definitely" a disturbance had occurred, that he had not engaged in fisticuffs with one Kendrick, and did not know whether Kendrick had fought anyone, and that he, the accused, had been jumped in the mess hall by a man and had fought with him. The law officer again admonished the court "that the last four questions proposed by the Prosecution and the answers thereto must not be considered by the court in any way as affecting the guilt or innocence of the accused in connection with the offenses which he was questioned about but

502 ·

merely goes to his credibility as a witness."

## I

When an accused takes the stand, his credibility may be attacked as in the case of any other witness. ▉ United States v Hatchett, 2 USCMA 482, 9 CMR 112. Cf. United States v Reid, 8 USCMA 4, 23 CMR 228. As paragraph 149b(1) of the Manual for Courts-Martial, United States, 1951, states in discussing this problem:

". . . On the question of his credibility and within the limits imposed by the privilege against self-incrimination a witness may be cross-examined as to *any matter touching upon his worthiness of belief*, including (unless the court in its discretion decides that the relationship of the particular matter to the credibility of the witness is too remote) . . . acts of misconduct. . . ." [Emphasis supplied.]

It is, of course, proper to question a witness concerning convictions of crimes or acts of miscon- ▉ duct that are relevant and ▉ material. United States v Long, 2 USCMA 60, 6 CMR 60; United States v Berthiaume, 5 USCMA 669, 18 CMR 293. Cf. United States v Brown, 6 USCMA 237, 19 CMR 363. But every departure from normal human behavior may not be shown on the pretext that it affects credibility. Bad men are not always liars. Acts shown must demonstrate characteristics that lessen the likelihood that the accused is telling the truth. Competent evidence of conviction of any crime involving moral turpitude would invariably attain such a goal though such crimes or acts of misconduct short of conviction are not admissible unless they fall within an exception of the general exclusionary rule.

## II

Prosecution witnesses were permitted to testify that Nicholson had repeatedly been absent without leave—although he had apparently never been disciplined for those derelictions; that he had once

threatened a sergeant; that on one occasion he left unattended or abandoned a loaded truck which he was assigned to drive; and that, while a prisoner in the stockade, he caused certain letters to be smuggled out of the stockade in violation of existing regulations. In addition, another witness in rather ambiguous language, suggested that in some unexplained manner and at some undisclosed time, Nicholson had broken the leg of a cat—presumably this indicated that Nicholson had a disposition toward violence.

Paragraph 153b(2)(b), Manual for Courts-Martial, supra, in this regard, states that:

"It is generally not permissible to impeach a witness upon the ground that he has committed a crime affecting his credibility by adducing—*by means other than cross-examination of the witness*—evidence not amounting to proof of conviction of the crime." [Emphasis supplied.]

The law is well settled that evidence of other offenses or acts of misconduct is not admissible to prove guilt of a specific offense charged, but is only admissible if similar to that charged, for the limited purpose of establishing knowledge, intent, or design of the accused. United States v Jones, 2 USCMA 80, 6 CMR 80; United States v Pavoni, 5 USCMA 591, 18 CMR 215. The test as stated by this Court in United States v Hutchins, 6 USCMA 17, 19 CMR 143, "is simply one of whether the act of misconduct is a 'matter touching upon his [the witness'] worthiness of belief.' Manual for Courts-Martial, United States, 1951, paragraph 149b(1)." The law also forbids the use of such evidence of specific acts to show either good or bad character. This is so because such evidence tends to provide the triers of fact with extraneous ethical justification for conviction in disregard of the evidence. Another reason for these limitations is that an accused arraigned on specific charges cannot be prepared to disprove or justify every act of alleged misconduct which he may at some time have committed. The introduction of such testimony tends unquestionably to multiply and confuse issues and to distract the minds of the court-martial from evidence directly related to the guilt or innocence of the accused. United States v Yerger, 1 USCMA 288, 3 CMR 22; see United States v Haimson, 5 USCMA 208, 17 CMR 208. Experience, on the other hand, has shown that the disallowance of such prior acts of misconduct tends to prevent confusion of the issues by the jury as well as unfair surprise and undue prejudice to the accused. Michelson v United States, 335 US 469, 69 S Ct 213, 93 L ed 168. In a word, it is immaterial.

### III

Applying the foregoing principles of law to the instant case, we are of the opinion that the efforts of trial counsel to impeach the credibility of the accused, Nicholson, exceeded permissible bounds. The material brought out in cross-examination was not within allowable limits with regard to its relevance to the worthiness of belief of the accused. It had only an extremely tenuous connection with the question of veracity. That connection exists only through the probability that "bad men" are mendacious. See United States v Long, supra. Further, the evidence elicited from prosecution witnesses concerning prior acts of bad conduct did not amount to evidence of convictions of crimes. It had no relevance to the question of the veracity of the accused and its only apparent purpose—despite any disclaimer of trial counsel—was to reveal a criminal disposition on the part of the accused. United States v Hutchins, supra; see United States v Berthiaume and United States v Haimson, both supra. It did not come within the allowable bounds of character impeachment evidence. United States v Moore, 5 USCMA 687, 18 CMR 311. We cannot see the relevance of the other alleged acts of misconduct to the crime of rape for which the accused was undergoing trial. United States v Yerger, supra. None of the specific acts of misconduct were admissible for the purpose of showing the bad character of Nicholson

or to indicate probability of guilt of the rape. It is not amiss also to point out that normally a witness—even an accused—may not be impeached by extrinsic evidence on a collateral point. In the instant case the extrinsic evidence against the accused is entirely collateral. See United States v Haimson, supra; United States v Hutchins, supra.

We conclude, however, that although the numerous improper references at trial to other acts of misconduct on the part of the accused, Nicholson, were error and should be scrupulously avoided by prosecutors in the future, they could have had but slight impact on the court's findings because of the compelling nature of the evidence presented. Article 59, Uniform Code of Military Justice, 10 USC § 859. Placed in another setting, such error would certainly have been prejudicial. Here, however, the victim's testimony was thoroughly corroborated and in many important aspects by the testimony of the accused themselves. In addition to evidence of fresh complaint, there was also introduced credible medical testimony showing the victim's bruised and hysterical condition shortly after the rape occurred. Furthermore, the defense was wholly unable to impeach in the slightest the prosecution's evidence of the victim's excellent character and reputation in the community. These circumstances, together with the accused Nicholson's admissions that he slapped the victim when she attempted to escape and that he warned her not to cry out when they stopped at the service station, dispel any notion that the six acts of intercourse which took place within a short period of time were a result of licentious submissiveness on her part, rather than outward coercion on theirs. The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

As the evidence in this case is compelling, I find it unnecessary to express an opinion as to the admissibility of evidence of the accused's specific acts of misconduct.