UNITED STATES, Appellee,

v.

Michael JOHNSON, Private, U. S.
Army, Appellant.

No. 29,545.

U. S. Court of Military Appeals.

Aug. 29, 1975.

*Captain Anthony J. Siano* argued the cause for Appellant, Accused. With him on the brief were *Colonel Victor A. De Fiori* and *Lieutenant Colonel James Kucera.*

*Captain Clement L. Hyland* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Joel M. Martel, Captain Robert L. Powell, Captain Raymond Michael Ripple, Captain Robert P. Terzian,* and *Captain Gary F. Thorne.*

## OPINION OF THE COURT

COOK, Judge:

This appeal concerns the correctness of a trial ruling allowing Government counsel to impeach a defense witness by evidence of previous misconduct by the witness.

Private Leminster, a military policeman, testified on behalf of the accused, substantially corroborating the accused's denial that, while waiting to be searched by the German police, he had dropped a bottle containing morphine tablets. Overruling defense counsel's objection on the ground that the questioning was "not proper," the judge permitted trial counsel to question Leminster about an absence without leave from April 16 to May 6, 1973; another such absence on the previous day; and about five occasions during the "last two or three months" on which Leminster had received nonjudicial punishment under the provisions of Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815, for "AWOL," "late for duty," and "disobeying orders." The ruling was made without requiring Government counsel to provide particulars as to the nature and number of the orders involved and the number and length of the unauthorized absences.

■ Many circumstances may affect the believability of a witness. Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 153*a*. Perhaps most immediately apparent to the factfinders is the witness' demeanor as he testifies, but a common method of attack is to show previous misconduct by the witness. Military law allows impeachment of a witness by evidence of misconduct, but not all such conduct qualifies for such use. As observed in an early case, not every "departure from the norm of human behavior" affects credibility. *United States v. Long*, 2 U.S.C.M.A. 60, 70, 6 C.M.R. 60, 70 (1952). The Manual for Courts-Martial expressly requires that the misconduct of the witness involve "moral turpitude" or be of a sort "otherwise affecting his credibility." MCM, paragraph 153*b*; see *United States v. Britt*, 10 U.S.C.M.A. 557, 560, 28 C.M.R. 123, 126 (1959); *cf.* Fed.R.Ev. 608 and 609.

■ Discussion on the fluidity of the concept of moral turpitude appears in a number of cases in this Court. *United States v. Keleher*, 14 U.S.C.M.A. 125, 33 C.M.R. 337 (1963); *United States v. Moore*, 5 U.S.C.M.A. 687, 18 C.M.R. 311 (1955); *United States v. Berthiaume*, 5 U.S.C.M.A. 669, 18 C.M.R. 293 (1955). Suffice it for present purposes to refer to the general guideline for an offense involving moral turpitude, namely, does the authorized punishment include a dishonorable discharge or confinement at hard labor for a year or more.

■ Disobedience of an order may or may not qualify as a moral turpitude offense as the degree of punishment depends upon the source of the order and whether the disobedience was willful. MCM, paragraph 127*c*, Section A, Table of Maximum Punishments. The record contains no evidence as to these particulars in regard to the orders for which Leminster was administratively punished under Article 15. As recourse to Article 15 punishment is intended for "minor offenses," which the Manual indicates do not "ordinarily . . . in-clude misconduct of a kind" for which the individual can be punished by a dishonorable discharge or confinement for a year,[1] the reasonable inference is that the misdeeds in issue did not qualify for use under the imposable punishment test. As to the value of these acts as evidence affecting credibility, the record discloses no circumstance, such as fraud or deceit, incident to their commission. By itself previous disobedience of an order does not inherently "create an inference that the . . . [witness] is unworthy of belief." *United States v. Gibson*, 5 U.S.C.M.A. 699, 703, 18 C.M.R. 323, 327 (1955). Consequently, neither of the permissible prerequisites for the use of evidence of misconduct to impeach was satisfied. It follows, therefore, that the trial judge erred in allowing Government counsel to impeach Leminster with evidence that he had disobeyed orders.

What we have said of Leminster's disobedience misconduct is also true of his unauthorized absences. The punishment for unauthorized absence also varies; in its most severe form, an absence in excess of 30 days, the offense authorizes a dishonorable discharge. The first absence as to which trial counsel inquired was for one of 20 days; the second was for 1 day; and the remaining absences were for unspecified periods, but as they were punished administratively under Article 15, it may fairly be inferred that they too would not qualify as offenses involving moral turpitude. No evidence suggests that any of the absences were attended by fraud, deceit, or other circumstance likely to diminish Leminster's credibility. As this Court held in *United States v. Nicholson*, 8 U.S.C.M.A. 499, 502–503, 25 C.M.R. 3, 6–7 (1957), evidence that the witness "had repeatedly been absent without leave" is not relevant to his " 'worthiness of belief.' " Thus, the trial judge also erred in allowing Government counsel to impeach Leminster on the basis of these acts of misconduct.[2]

1. MCM, paragraph 128*b*.

2. In *United States v. Gibson*, 5 U.S.C.M.A. 699, 701, 18 C.M.R. 323, 325 (1955), the Court held

that evidence that the witness had been tried for "failure to repair" was inadmissible for

A mistaken ruling allowing impeachment does not justify reversal of an otherwise valid conviction if there is no reasonable risk that the error had an "impact on the court's findings." *Id.* at 504, 25 C.M.R. at 8. Although Government counsel contend that the error was harmless, in their brief, they concede it is "common knowledge" that the "ordinary course of police work" trains officers "to observe even minute details and to store their observations for subsequent recall in court" so that their testimony is cloaked with an "air of authority." While this picture of the accuracy and veracity of a police officer may be overdrawn, it does emphasize the probable importance of Leminster's testimony to the accused. If believed, it gave greater weight to the accused's denial that he had not dropped the bottle that contained the morphine tablets; disbelieved, we cannot be sure it did not "ultimately turn the balance against the accused." *United States v. Berthiaume, supra* at 683, 18 C.M.R. at 307. We conclude, therefore, that the error was prejudicial to the accused.

The decision of the Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to the convening authority or any other competent court-martial authority for further proceedings. A rehearing may be ordered.

Chief Judge FLETCHER and Senior Judge FERGUSON concur.

---

impeachment purposes. That holding requires a conclusion that the trial judge erred in allow-

ing use of evidence that Leminster had been "late for duty."