UNITED STATES, Appellee,

v.

Scott M. GAETA, Private First Class,
U.S. Army, Appellant.

No. 40730.
SPCM 14387.

U. S. Court of Military Appeals.

Jan. 17, 1983.

**384**

For Appellant: *Captain Edward J. Wa-linsky* (argued); *Colonel Edward S. Adamkewicz, Jr., Major James F. Nagle, Major Charles A. Byler* (on brief); *Captain David M. England; Captain Robert L. Gallaway.*

For Appellee: *Captain Gary L. Hoffman* (argued); *Colonel R.R. Boller, Major John T. Edwards, Major Robert B. Williams* (on brief); *Major Ted B. Borek, Major Michael L. DeBusk, Captain Paul K. Cascio.*

*Opinion of the Court*

COOK, Judge:

Contrary to his pleas, appellant was convicted by a special court-martial composed of officer and enlisted members of conspiracy to sell marihuana and of two sales of marihuana, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934, respectively. The overt act allegedly committed to effect the object of the conspiracy was the wrongful sale of 42.95 grams of marihuana by Specialist Four David W. Johnson on March 19, 1979. The two wrongful sales with which appellant was charged occurred on the same date and aggregated the same quantity of the drug.

Appellant was sentenced to a bad-conduct discharge, confinement at hard labor and forfeiture of $276.00 pay per month for 6 months, and reduction to the lowest enlisted grade. The convening authority approved these results but suspended the bad-conduct discharge and confinement in excess of 105 days.[1] The United States Army Court of Military Review affirmed in an unpublished Memorandum Opinion. This Court granted review of these two errors assigned by appellate defense counsel:

I

THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANT WAS NOT PREJUDICED BY THE INADMISSIBLE HEARSAY STATEMENT THAT APPELLANT WAS THE PERSON WHO WOULD BE SELLING THE DRUGS WHERE THE EVIDENCE ESTABLISHED THAT AP-

---

1. Thereafter some of the forfeitures of pay were suspended but later the suspension of the discharge was vacated.

PELLANT DID NOT ACTUALLY SELL THE DRUGS AND THE GOVERNMENT INTRODUCED OTHER INADMISSIBLE HEARSAY LINKING APPELLANT TO THE DRUGS WHICH WERE ACTUALLY SOLD.

## II

THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANT WAS GUILTY OF THE SUBSTANTIVE OFFENSES (CHARGE II) ON THE BASIS OF PROOF THAT HE WAS GUILTY OF CONSPIRACY TO COMMIT THOSE OFFENSES WHERE THE COURT MEMBERS WERE NOT GIVEN A *PINKERTON* INSTRUCTION.

## I

Special Agent Joseph N. Hite of the Army Criminal Investigation Division (CID) testified that in March 1979 he "was working undercover in the narcotics section of the Fort Riley CID office." According to his account:

> My job at that particular time was to go out on the street; to engage in conversation or activity with anyone which was either identified to us through criminal information reports or individuals who were identified as trafficing [sic] in narcotics and controlled substances. Once these individuals were identified to us my job was to go out and make controlled narcotics purchases from them.

Specialist Four Arthur Belanger had been a narcotics informant working for Hite. On March 19, Hite was contacted by Belanger, who "related it would be possible to make a controlled purchase of marihuana." After searching Belanger pursuant to standard procedures in order to assure that he did not possess any narcotics or controlled substances, Hite "issued him the amount of twenty-five dollars in confidential funds for the purpose of making a controlled purchase."

Without defense objection, Hite explained that "[i]t was determined that the target of this investigation, the individual who would be selling the controlled substance, marihuana, was PFC Gaeta."[2] While Hite remained in the surveillance vehicle, Belanger went into building 8054, Fort Riley, Kansas. A short time later Belanger reappeared, but, before returning to Hite's location, he stopped and had a conversation with an individual in a light blue Volkswagen. Belanger then went to Hite's vehicle and told Hite that "the purchase would be made within building 8054, room number 102." Hite then recovered the $25.00 from Belanger, re-searched him, and re-issued the funds to him. Thereafter the two men went to room 102.

When he went in, Hite saw Specialist Johnson, who opened the door, and a female, who he later learned was PFC Hayward. No one else was in the room. Without defense objection, Hite testified:

> After entering the room I observed Specialist Johnson proceed to a wall locker, an open wall locker, at which time he removed three plastic bags containing a vegetable substance. He threw these three bags on the bed located adjacent to the wall locker; he related that each bag contained a half ounce of marihuana; that the price for each bag was twenty-five dollars; *and also that it was all that remained of what Gaeta had given him.*

(Emphasis supplied.) Again without defense objection, Hite repeated the statement which Johnson had made.

Hite testified that he and Belanger proceeded over to the bed where the bags were located and that Belanger purchased one bag from Johnson for $25.00 and placed it in his pocket. When Hite started to examine the remaining two bags, appellant entered the room, and stated, "Wow man, every time I come in here I am making the money." Appellant proceeded over to the

---

**2.** In his opening statement trial counsel stated, "On the night of 19 March 1979 contact was attempted to be made with PFC Gaeta but instead contact was made with Specialist Four David Johnson."

opposite side of the bed, and Hite continued with the purchase of the two remaining bags of marihuana for $50.00. Shortly after purchasing the three bags, he and Belanger departed. Hite returned to the CID office, where he initiated action to have a laboratory test the contents of the bags.

On cross-examination, defense counsel initially questioned Hite about an inconsistency between the words uttered by appellant, as testified to by the witness, and those which had been recited in the agent's investigation report.[3] Hite conceded that none of the bills used by Belanger in his purchase—for which the serial numbers had been recorded—were in appellant's possession when he was apprehended or were ever recovered from him; that appellant never touched the marihuana while he was in the room; and that, other than the statement as to which Hite already had testified, he did not "recall . . . [appellant's] stating anything about Johnson selling marihuana for him."

Then defense counsel inquired about Hite's apprehension of appellant several months earlier for bribery.[4] When, upon redirect examination, trial counsel asked Special Agent Hite to describe what occurred at the time of appellant's apprehension for bribery, the military judge called a recess; at the ensuing Article 39(a), 10 U.S.C. § 839(a), session, he discussed with counsel the problem of uncharged misconduct. Trial counsel then stated that he would instruct Hite not to testify about the ultimate results of the prior apprehension.

Turning his attention to the statement made by Johnson about the source of his marihuana, the judge inquired:

I would like to know whether or not first of all that's objected to by the defense and if so what the particular theory of the Government is in introducing that piece of evidence.

When defense counsel replied that he believed that this evidence was "inadmissible hearsay," the judge asked: "Then why didn't you object? You felt it was my job?" Later, trial counsel contended that under paragraph 140 b of the Manual for Courts-Martial, United States, 1969 (Revised edition), the statement was admissible because it had been made by a co-conspirator during a conspiracy and pursuant thereto. The military judge reserved decision on the admissibility of this evidence.

Next, trial counsel made an offer of proof "that Special Agent Hite will also testify that immediately after the transfer of the second of the two bags of marihuana additional discussion was involved between Special Agent Hite, the two parties in the room, Private Hayward and Specialist-Four Johnson" and that

an amount of what they offered to be marihuana resin, or hash, was offered for sale, and that the accused in fact during this offer was present and even made the offer to smoke it as he approached Special Agent Hite and Hite will testify he was trying to stay away from him and the accused stated, "Lets smoke some to see if it is good stuff."

Trial counsel contended that this evidence was admissible both as direct evidence of the conspiracy between appellant and Johnson, and to rebut the defense contention, allegedly raised in their opening argument, that appellant was a mere innocent bystander to the transaction. Over defense objection, the judge decided to admit the proffered evidence, without at the time identifying the basis for his ruling. When the trial resumed, Hite testified on redirect in accordance with the offer of proof. Also, Hite explained that, because he had been working undercover, his appearance was considerably different from when he had previously apprehended appellant for bribery.

---

3. In the agent's investigation report the statement reported was, "Wow, man, I'm making the money. Every time I come in here someone is buying"; and this language was ultimately adopted by Hite in his testimony.

4. Apparently this line of questioning was with a view to suggesting that appellant would not have made an incriminating statement in the presence of someone whom he knew to be a CID agent.

After Hite testified, the Government offered evidence that marihuana was the substance in the bags which Hite delivered after the purchase to the CID evidence custodian. Then the Government rested.

As its first witness, the defense called Private First Class Benson, who was a friend of appellant and had been a roommate of Specialist Four Johnson in March 1979. Benson testified that on March 19 he observed Belanger and Hite enter Room 102, talk about marihuana prices, and exchange money for the bags. Appellant was not present during this transaction, although "he entered the room as Belanger and Hite were leaving." The money was in view when appellant entered and "[h]e made some statement referring to somebody making money or Johnson making some money." Appellant made no remark about smoking hash, nor did he say anything that led Benson "to believe that he was obtaining money from this transaction." Moreover, Benson did not see any money change hands between Johnson and appellant; he had never known appellant to sell marihuana; and he had never heard anything leading him to believe that appellant and Johnson were in business together.

On cross-examination trial counsel attempted to elicit admissions from Benson that he might have confused some of the events with those that had occurred on March 31, 1979, when a single bag of marihuana was purchased from Johnson by Belanger and Hite.

Taking the stand in his own behalf, appellant denied that he had ever sold marihuana to anyone or "asked or authorized Specialist Four Johnson to sell marihuana on ... [his] behalf." According to appellant, he "went over" to Johnson's room and

knocked on the door and at the time I was walking in Belanger and some other guy walked out so I walked in sideways to get inside the door and when I got in I saw Johnson put some money in his pocket and I said, "Wow, somebody is making a lot of money here," and with that he [Johnson] just put the money in his pocket.

After introducing in evidence a special court-martial order establishing that appellant had been convicted of three specifications of receiving bribes, trial counsel cross-examined appellant about various details as to which his version of the events of March 19 differed from that given by Special Agent Hite. Thereafter, the defense rested.

As a rebuttal witness, the Government called Sergeant First Class Behrens to testify about certain prior inconsistent statements made by PFC Benson. In particular, Behrens testified that he was present at an interview with Benson in which Benson stated that "he couldn't be sure" whether the incident to which he testified occurred on the 19th or the 31st of March—"[a]ll he knew was that it happened sometime after payday." Then Special Agent Hite was recalled to testify about his purchase of a bag of marihuana from Specialist Johnson on March 31. Hite had not been able to identify the two individuals who were present in room 102 with Johnson at that time, but he was sure that appellant was not there.

Upon examination by the military judge, Hite testified that, when appellant entered the room on March 19, "Belanger had just completed his transaction" and he (Hite)

was still in the process of making a purchase, my purchase of the two bags from Johnson.

\*     \*     \*     \*     \*     \*

I think at the time that there was a knock on the door Johnson seized the marihuana and after Private Gaeta had came [sic] in he replaced the marihuana back on the desk.

Hite did not recall whether any marihuana was in view when appellant made his incriminating remark. On redirect, Hite testified that Benson was not in the room on March 19, and he was not sure whether Benson was there on March 31, since Hite was unable to identify the persons present at that time. Over defense objection, Hite reiterated Johnson's comment about the source of the marihuana he was selling and,

without objection, Hite testified once again about appellant's statement and about his offer to smoke hashish.

Upon the conclusion of the Government's rebuttal, the judge considered in an Article 39(a) session whether Johnson's statement was admissible. Primarily, the judge was concerned whether the statement was in furtherance of the conspiracy. Evidently concluding that it was not or that the Government had failed to prove that it was, the judge ultimately ruled the statement inadmissible. During the same session there was a discussion of a question submitted by the president of the court about the absence of testimony from Belanger. Trial counsel stated for the record that "the United States Army at Fort Riley, Kansas has made numerous attempts to locate Specialist Four Belanger for numerous courts-martials and as a result, as of now we still haven't located him and got him out here." The judge then ascertained that neither side wished to delay the trial for further attempts to locate Belanger. Later he informed the members "that Belanger cannot be located and that counsel do not desire to have him appear as a witness." [5]

In his instructions to the court members, the judge explained the elements of conspiracy and of the wrongful sales of marihuana which had been the object of the conspiracy. As to each of the specifications of wrongful sale under Charge II, the judge instructed that the court members must find

that ... the accused and Specialist Four Johnson entered into an agreement to sell marihuana.

[T]hat at the time of the agreement, while the agreement continued to exist, Specialist Four Johnson, with the purpose of effecting the object of the agreement, sold ... grams, more or less, of marihuana to Specialist Four Arthur Belanger.

[T]hat such sale was wrongful.

And ... that under the circumstances the conduct of the accused and Specialist Four Johnson was to the prejudice of good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.

With respect to the same specifications, the judge also instructed the members on aiding and abetting. Regarding Hite's testimony that appellant offered to smoke contraband with the purchasers, the military judge instructed the court members:

This testimony was introduced solely for a limited purpose. That limited purpose was to rebut the issue raised by the defense that the accused was an innocent bystander and had nothing to do with the alleged sale of marihuana. I wish to emphasize that such evidence may be considered for no other purpose whatsoever. You may not infer from such evidence that the accused has an evil disposition or criminal propensity and that he therefore committed the offense alleged.

In connection with their deliberations, the court members later asked for the repetition of certain instructions and for additional instructions.

## II

■ Appellant contends that he was prejudiced by the "determination" of Hite and Belanger that appellant would be selling marihuana. This prejudice was aggravated, according to appellant, by the fact that the court members on several occasions heard Johnson's statement that the marihuana was all that remained from what appellant had provided him, even though they were ultimately instructed to ignore it. Additional aggravation accrued, appellant contends, by the receipt of evidence of uncharged misconduct, i.e., that appellant offered to smoke contraband with Belanger and Hite.

The Government counters that the "determination" that appellant would be sell-

---

**5.** Specialist Four Johnson also was not called by either side to testify as a witness, although he apparently had already pleaded guilty and been convicted of the two wrongful sales of marihuana with which appellant was charged. In a post-trial letter to the staff judge advocate, Johnson denied appellant's involvement in the sales of marihuana.

ing was not hearsay and was admissible as a foundation for placing Hite at the scene of the crime. In addition, the Government implies that Johnson's statement identifying appellant as his source of marihuana should have been admitted as the statement of a co-conspirator in furtherance of the conspiracy.

The Court of Military Review treated the "determination" that appellant would be selling as hearsay and concluded that it should have been excluded. Nevertheless, testing for prejudice, the court found "no reasonable risk" that the error had an impact on the court-martial's findings. We agree with the Court of Military Review.

Hearsay is defined as "[a] statement which is offered in evidence to prove the truth of the matters stated therein, but which was not made by the author when a witness before the court at a hearing in which it is so offered." The Manual for Courts-Martial goes on to explain that:

[t]he basis of the rule is the fundamental principle, which is subject to certain well-established exceptions, that in a criminal prosecution the testimony of the witnesses shall be taken before the court, so that at the time they give the testimony offered in evidence they will be sworn and will be subject to cross-examination, the scrutiny of the court, and confrontation by the accused.

Para. 139a, Manual, supra.[6] Of course Agent Hite's testimony did not in literal form involve an in-court reiteration of a previous out-of-court statement. Nevertheless, it is evident that the Court of Military Review, examining the testimony for substance, concluded that the "determination" was actually based upon information provided him by Belanger. Thus, obviously, the Court of Military Review concluded that the policy of the hearsay rule was applicable, and we agree. Moreover, the

testimony is objectionable because what Hite and Belanger expected is irrelevant.

Had Agent Hite contented himself with explaining that he went to room 102 upon information received, it may arguably not have been objectionable. See Foster v. Commonwealth, 209 Va. 297, 163 S.E.2d 565 (1968); Hemphill v. Commonwealth, 379 S.W.2d 223 (Ky.1964); State v. Barnes, 345 S.W.2d 130 (Mo.1961). However, it was quite unnecessary to identify appellant by name and to associate a specific criminal activity with him merely for the purpose of explaining why Hite happened to be at the scene. Of course the difficulty is that, as a police officer becomes increasingly specific in testifying about his reasons for initiating an investigation, the trier of fact is more likely to consider the reports received by the officer for purposes other than merely to understand why the investigation was initiated. United States v. Mancillas, 580 F.2d 1301, 1309 (7th Cir.1978); United States v. Gomez, 529 F.2d 412, 416 (5th Cir.1976); United States v. Rodriguez, 524 F.2d 485, 486 (5th Cir.1975). In a similar circumstance, the Court of Appeals for the Seventh Circuit disapproved of such evidence, noting that "there was no suggestion here of any improper law enforcement purposes, and in any event the agents' reasons for investigation were most assuredly not something the Government had to prove to carry its burden." United States v. Mancillas, supra at 1310. Accordingly, we agree with the Court of Military Review that the evidence was improperly received.

■ However, before we test for prejudice, we must consider the other matters which appellant contends caused him prejudice. As indicated, he contends that Hite's account of appellant's offer to smoke hashish with Hite and Belanger should have been excluded as evidence of uncharged misconduct. We disagree. Evidence of un-

**6.** Since appellant was tried before September 1, 1980, the effective date of the Military Rules of Evidence, paragraph 139 a of the Manual for Courts-Martial, United States, 1969 (Revised edition), is the authoritative source for the definition of "hearsay." However, the definition in Mil.R.Evid. 801(c) is substantially identical:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The draftsmen of the Military Rules noted that the definition of hearsay in Mil.R.Evid. 801(c) "is taken from the Federal Rule verbatim." 8 M.J. CC.

**390**

charged "offenses or acts of misconduct of the accused is admissible ... [w]hen it tends to rebut any issue raised by the defense, unless its sole purpose ... is to rebut evidence of the accused's good character." Para. 138 *g* (7), Manual, *supra.* As the military judge here limited consideration of the testimony to rebuttal of an issue raised by appellant,[7] *i.e.,* that he was a mere innocent bystander, the evidence was properly admitted.

■ With respect to Johnson's statement that the marihuana was all he had left of what appellant had given him, the defense did not at trial contest the sufficiency of the military judge's curative instructions or move for a mistrial. We are satisfied that the instruction was sufficient to cure any harm which might have accrued to appellant. *See United States v. Clark,* 7 M.J. 178, 181 (C.M.A.1979).[8]

We turn finally to the test to be employed on appeal when it is determined that an error of nonconstitutional dimension has occurred in the trial. As the Court of Military Review correctly stated:

The error must be tested to determine if there is a reasonable risk that the error had an impact on the court's findings. *United States v. Johnson,* 1 M.J. 152 (C.M.A.1975 [1976]); *United States v. Nicholson,* 8 U.S.C.M.A. 499, 25 C.M.R. 3

(1957); *see also United States v. Zone,* ... [7 M.J. 21 (C.M.A.1979) ].

Unpublished opinion at 3.

■ We agree on these facts that the error did not have an impact on the trial court's findings. Examination of the record reveals that the *only* affirmative evidence before the court linking appellant to Johnson's sales was Hite's rendition of what appellant said when he entered the room and observed the sale in progress. This conclusion is buttressed by trial counsel's argument on findings that

we wouldn't be sitting here today had the accused been silent *when he walked in because the Government would have no evidence whatsoever of any criminal activity on his part* but the accused made a mistake .... *He walked in and announced for all to hear* the statement to the effect, "Wow, I am making the money. Everytime I come in here somebody is buying this stuff." By his own statement, Gentlemen of the Jury, he has, the Government maintains, proven his guilt.

(Emphasis added). That appellant's admission under the circumstances was the exclusive evidence linking him to Johnson's sales was further emphasized by the military judge's instructions to disregard certain evidence and to consider restrictively other evidence as indicated above.[9] In this pos-

---

**7.** Accordingly, we do not consider whether there were other bases for admission of the evidence. *See* n. 8, *infra. See also United States v. James,* 5 M.J. 382 (C.M.A.1978).

**8.** The military judge's ruling that Johnson's statement was inadmissible constitutes the law of the case, and we reject any invitation to examine the correctness of the ruling with a view to possibly considering the excluded evidence on the merits. *United States v. Morris,* 13 M.J. 297, 300 (C.M.A.1982) (Everett, C.J., concurring in the result); *United States v. Starr,* 23 U.S.C.M.A. 584, 50 C.M.R. 849 (1975). We note merely that the concerns of the military judge were valid and that resolution of the issue is far from clear-cut. *See, e.g., United States v. Patton,* 594 F.2d 444, 447 (5th Cir. 1979); *United States v. Eubanks,* 591 F.2d 513, 520–21 (9th Cir.1979); *United States v. Carlson,* 547 F.2d 1346, 1362 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *United States v. James,* 510 F.2d 546, 549–50 (5th Cir.1975), *cert. denied sub*

*nom. Vasquez v. United States,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *United States v. Hutchinson,* 488 F.2d 484, 491 n. 16 (8th Cir.1973), *cert. denied sub nom. Ennis v. United States,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed. 219 (1974); *Salazar v. United States,* 405 F.2d 74 (9th Cir.1968); *United States v. Birnbaum,* 337 F.2d 490, 495 (2nd Cir.1964).

**9.** Chief Judge Everett, in his dissent, suggests that the evidence of conspiracy was perhaps legally insufficient due to the requirement of paragraph 140 *a* (5), Manual, *supra,* that admissions be corroborated. In the Chief Judge's view, appellant's remarks upon entering the room, as related by Agent Hite, were uncorroborated by any other evidence. However, the evidence showed that appellant made the statement upon observing Johnson in the process of selling drugs to Hite. In our opinion, this evidence is about the strongest corroboration of the admission imaginable. We have no difficulty in concluding that the admission was cor-

ture, we are satisfied that the court members chose to believe Hite's version of the events at the scene, rather than appellant's. Thus Hite's testimony that it was determined that appellant would be selling drugs did not contribute to appellant's conviction.

### III

■ In *United States v. Pinkerton,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the Supreme Court held that a person may be charged with—and convicted of—both conspiracy and any substantive offenses committed by a co-conspirator in furtherance of that conspiracy, even if that conspirator was not a direct actor. *See United States v. Washington,* 1 M.J. 473 (C.M.A. 1976); para. 160, Manual, *supra.*[10] However, in *Nye and Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Court held that before a non-actor could be convicted of a substantive offense under the complicity doctrine of *Pinkerton,* proper instructions setting forth that doctrine must be given the fact finders.

To date, the Supreme Court has not articulated any particular form which those instructions must take. Accordingly, any instruction which fairly conveys to court members the meaning of *Pinkerton's* complicity-of-conspirators doctrine would appear to meet the *Nye and Nissen* requirement. *Compare United States v. Decker,* 543 F.2d 1102, 1103–04 (5th Cir.1976), *with United States v. Sperling,* 506 F.2d 1323, 1341 n.27 (2nd Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).

As to each alleged sale of marihuana in this case, the members were instructed by the judge that they must find that at the time and place indicated:

> [T]he accused and Specialist Four Johnson entered into an agreement to sell marihuana.

> [T]hat at the time of the agreement, while the agreement continued to exist, Specialist Four Johnson, with the purpose of effecting the object of the agreement, sold ... [a certain amount] of marihuana to ... [the named buyer].

> [T]hat such sale was wrongful.

> And ... that under the circumstances the conduct of ... [appellant] and ... Johnson was to the prejudice of good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.

In other words, the members were advised in pertinent part that, should they find a conspiracy to sell marihuana existed between appellant and Johnson, they could convict appellant of Johnson's sales of marihuana if such sales took place while the agreement continued to exist and were in furtherance thereof. Accordingly, the substance of the required *Pinkerton* instruction was fairly conveyed to the members.

■ The judge also informed the members that appellant might be convicted of the two wrongful sales of marihuana on the theory of aiding and abetting. The evidence in support of this theory is paper-thin at best, since the Government's own witness testified that the sale to Belanger was already completed, and the sale to the witness was already in progress, when appellant entered the room and exclaimed, "Wow man, every time I come in here I am making the money." However, any error which may have occurred in submitting Charge II to the members on a theory of aiding and abetting was harmless. The findings of the court members on Charge I that appellant was guilty of conspiracy and of the overt act in furtherance thereof—this overt act being the same transaction which constituted the offenses alleged under Charge II— reveal that the court members determined that appellant was guilty of two wrongful

roborated and that the evidence was legally sufficient.

**10.** Like civilian jurors who may render an inconsistent verdict, the members of a court-martial need not return consistent findings. *See Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70

L.Ed.2d 530 (1981); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

sales pursuant to the vicarious liability rationale of *Pinkerton.*

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER concurs.

EVERETT, Chief Judge (dissenting):

I agree fully with the general rules of law which the majority opinion lucidly expounds. However, I am at odds with the manner of their application to the specific facts of the case at bar.

Appellant was convicted of a conspiracy to sell marihuana and of two sales of the drug. Since he had not been present when the sales were negotiated, his criminal liability for those sales is vicarious and is based on the responsibility that one co-conspirator has for crimes committed by another co-conspirator in furtherance of the conspiracy.

Thus, the basic question is whether appellant was prejudiced in some way with respect to the findings on the conspiracy charge. In that regard, the only relevant evidence was appellant's comment when he walked into the room where Johnson was selling marihuana. The dependence of the prosecution's case on Gaeta's remark was acknowledged by trial counsel in his argument when he said:

> [W]e wouldn't be sitting here today had the accused been silent when he walked in because the Government would have no evidence whatsoever of any criminal activity on his part.

It seems only fair to characterize the Government's case here as weak, since it depended on a single remark by appellant. As to that remark, the testimony at trial of Special Agent Hite, the government witness, differed from his own investigation report; and appellant and a corroborating defense witness testified that, upon entering the room, Gaeta had only made the non-incriminating comment that "somebody

is making a lot of money here." Furthermore, even accepting the least favorable version of Gaeta's remark, it certainly was not a confession to participation in a conspiracy.

Although Gaeta's comment was an admission by him, paragraph 140 *a* (5) of the Manual for Courts-Martial, United States, 1969 (Revised edition), which was in effect when the case was tried, states the

> general rule that a confession or admission of the accused cannot be considered as evidence against him on the question of guilt or innocence unless independent evidence, either direct or circumstantial, has been introduced which corroborates the essential facts sufficiently to justify an inference of their truth.[1]

*Accord* Mil.R.Evid. 304(g). While paragraph 140 *a* (5) contains an exception for "statements made prior to or contemporaneously with the act," it is hard to fit appellant's remark within that exception, for there was no "act" to which Gaeta's comment was related. In short, as I read the Manual, there is a real question as to whether appellant could properly be convicted of conspiracy on the basis of a single remark without some "independent evidence, either direct or circumstantial," that the conspiracy existed.

There was plenty of "independent evidence" that marihuana was sold by Johnson to Belanger. However, there was *no* "independent evidence" that Johnson made these sales pursuant to a conspiracy with anyone. Indeed, the closest thing to "independent evidence" of the conspiracy is the very evidence which the majority opinion properly labels inadmissible hearsay. Since the Government's failure to introduce any evidence of a conspiracy between Johnson and Gaeta, other than a single remark by appellant, left it with a case which, at best, was weak and probably was not even legally sufficient to establish a conspiracy, I cannot subscribe to the majority's conclusion that reception of the inadmissible hearsay evi-

1. The requirement of corroboration under paragraph 140 *a* of the 1951 Manual was even more stringent.

dence did not prejudice appellant as to the conspiracy charge. Likewise, he was prejudiced as to the substantive charges of sale, since the findings of guilty on those charges depended completely on the conspiracy findings.

The majority's conclusion that the reception of the inadmissible hearsay was not prejudicial is even harder to accept in view of the evidence of uncharged misconduct that was received over defense objection. I will not contest the majority's view that appellant's invitation to smoke hashish was admissible to rebut any issue raised by the defense—although I am unsure what issue this evidence tended to rebut in this case. However, the possibility of misuse of such evidence by the court members is obvious. That being so, there is an even greater likelihood that reception of the inadmissible hearsay was prejudicial, since, in conjunction with the evidence of uncharged misconduct, it would tend to persuade the court members that appellant was a "bad man" and for that reason should be found guilty as charged.

In sum, the Government's proof was unusually weak and it included evidence of uncharged misconduct, which creates a special danger of prejudice. Consequently, the reception in evidence of inadmissible hearsay was particularly damaging here, even though it might not have been if the Government had offered a stronger case.

Accordingly, I would set aside the findings of guilty and dismiss all charges and specifications.