**UNITED STATES**

v.

**Stephen J. CALOGERO, Machinery Technician Second Class, U.S. Coast Guard.**

**CGCMG 0078.**

**Docket No. 1023.**

U.S. Coast Guard Court of Criminal Appeals.

8 Aug. 1996.

Trial Counsel: CDR David G. Dickman, USCG.

Assistant Trial Counsel: LT Elisa Holland, USCG.

Detailed Defense Counsel: LT Heather McCay, JAGC, USNR.

Civilian Defense Counsel: Martin Reagan, Esquire.

Civilian Defense Counsel: Samuel Dalton, Esquire.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR John F. Koeppen, USCG.

Before Panel Four, BAUM, O'HARA, and WIESE, Appellate Military Judges.

WIESE, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members. After pleading not guilty to all charges and specifications, he was acquitted of one specification of attempted rape; two specifications of sodomy by force and without consent of the alleged victim, who was the same individual in the attempted rape and sodomy offenses; indecent assault of another woman; and assault and battery of a man. Despite his pleas, he was convicted of one specification of being drunk and disorderly, and three specifications of indecent assault, two of them by exceptions and substitutions—one to the attempted rape specification and the other to one of the sodomy offenses—all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 USC § 934. The three specifications of indecent assault occurred with the same woman on the same night, and the military judge instructed the court members that these offenses were multiplicious for sentencing purposes. The court sentenced Appellant to one

year's confinement and reduction to E–1, which the convening authority approved and ordered executed. Before this Court, Appellant has assigned six errors

### Assignments of Error VI, V, and III

■ Assignment of Error VI challenges this Court's civilian judge appointment. That assignment has been resolved against the Appellant by *U.S. v. Ryder*, 44 M.J. 9 (1996). Assignment of Error V challenges a record of nonjudicial punishment that was admitted into evidence prior to sentencing. The Government contends that failure to assert the basis raised here, when objecting at trial, constitutes waiver of that issue, absent plain error. We agree and, finding no plain error, deem the issue waived. Assignment of Error III argues that the military judge abandoned his neutral position and became an advocate for the Government when he *sua sponte* admonished a defense expert to answer the question asked on cross-examination and not to make gratuitous remarks and because he advised the members to disregard the statement made by the expert. The judge's actions were in response to the defense witness's tendency to narrate on matters above and beyond the question asked. In this instance, the expert witness was opining on the credibility of the complainant, which is improper testimony as the Appellant has noted in his Assignment of Error II. In light of the entire record, we find no merit to the argument that the military judge abandoned his role as an impartial judge.

### Assignment of Error I

The other assignments of error all relate to the three indecent assault offenses. The Appellant claimed that all of the activities that occurred between him and the victim were consensual. The victim, however, testified that they were without her consent.

In support of the Government's version of the case, the trial counsel called Dr. Ruth Morehouse. Dr. Morehouse was qualified as an expert in clinical psychology and in the treatment of victims of sexual abuse and sexual trauma. Dr. Morehouse was also the victim's therapist. Dr. Morehouse testified to the symptoms of the victim and that "her clinical presentation in the hospital and subsequent to the hospital was consistent with a person who had been a victim of sexual abuse." ROT 559. During the detailing of the symptoms, Dr. Morehouse testified that the victim told her that her roommate in the hospital had told her that "she was disruptive in her sleep, maybe thrashing around or something like that." ROT 551. Trial defense counsel objected, arguing that the statement was hearsay. The military judge overruled the objection. The trial testimony and objection were as follows:

Trial Counsel: What, if any, symptoms did you note of any recurring distressing dreams?

Witness: Yes. She reported that she had had some nightmares on the weekend prior to her admission to the hospital, and she reported that while she was in the hospital on one occasion she was told by her roommate that she was—

Defense Counsel: Objection to anything that's hearsay at this point. We're not talking a doctor saying that to a doctor. We're talking about a third person who has not been called as a witness at this point, and with respect to a roommate, I don't know if there's a basis to say she ever had a roommate. In fact, the evidence would indicate she said she didn't have a roommate.

Military Judge: Dr. Morehouse, is she talking about a roommate in the hospital?

Witness: In the hospital.

Defense Counsel: In the hospital? I mean we're dealing with another psychiatric patient at this point. Hearsay objection.

. . . .

Trial Counsel: Your Honor, I'm asking her if she exhibited any symptoms, and she's describing what those symptoms were. Whatever the report was from the patient is what brought on those symptoms. It's relevant. We're not telling—we're not presenting this evidence for the truth of what the psychiatric patient said. I think it just lays the basis for what symptoms she noted in the course of her treatment.

Military Judge: Overruled. Please answer.

Witness: Well, as I previously had said, she did tell me that she had some nightmares and trouble sleeping the weekend following the alleged event. When she was in the hospital, she slept a little better except for one occasion. She had some trouble sleeping, but reported that she didn't have nightmares except for one occasion. She was feeling unrested the next morning, and she was told by the person who was in the same room with her that she was kind of disruptive in her sleep, maybe thrashing around or something like that. And she has had ever since I've seen her—subsequent to her discharge from the hospital, she has had periods where she's had significant difficulties sleeping.

ROT 550–551. On appeal, Appellant argues that the admission of the statement of the roommate was error requiring that all three of the indecent assault charges be set aside.

■ Dr. Morehouse's dual status—that of expert witness and therapist—confuses the issue. The statements made by the victim to Dr. Morehouse that described her symptoms and were pertinent to diagnosis or treatment are not excluded as hearsay. Military Rule of Evidence (MRE) 803(4). The problem with the statement under consideration is that it is hearsay within hearsay and each part of the combined statement must conform to an exception to the hearsay rule. MRE 805. The statement of what the roommate told the victim is hearsay and does not fall within a recognized exception. Consequently, that statement could not be received in evidence to prove that the victim was, in fact, disruptive in her sleep. However, to the extent that Dr. Morehouse was testifying as an expert, the statement, while not admissible for its truth, was admissible to show the underlying basis for the expert opinion.

A complete reading of the trial testimony of Dr. Morehouse leads us to conclude that the primary purpose of her testimony was to elicit her expert opinion. The trial counsel sought and obtained her qualification as an expert. The trial counsel elicited a variety of symptoms noted by Dr. Morehouse. When defense counsel objected that the statement of the roommate was hearsay, the trial counsel responded that the statement was not being offered for its truth. After that response, the military judge overruled the objection without comment. At the conclusion of the direct examination of Dr. Morehouse, the trial counsel asked for her opinion as to whether the victim's behavior was consistent with that expected of a victim of sexual assault, and she responded that it was consistent. Finally, in his instructions to the members, the military judge included Dr. Morehouse in the instruction regarding expert testimony.

In *U.S. v. Neeley*, 25 M.J. 105 (CMA 1987), the Court of Appeals for the Armed Forces, then the Court of Military Appeals, noted that when an expert is testifying, the "distinction between testimony that is offered 1) for the truth of the matter or 2) to prove the underlying basis for an expert opinion is a line too fine to draw." *Id.* at 107. The Court urged the use of the MRE 403 balancing procedure in deciding whether to admit the evidence as a basis for the expert opinion under MRE 703.

■ In the case at hand, the best practice would have been for the military judge to do the MRE 403 balancing and explain the decision on the record. The military judge did not, however, put his reasoning on the record, instead just overruled the objection. We have conducted such a balancing and find the evidence to be admissible. It is certainly relevant that Dr. Morehouse considered the information in formulating her expert opinion. The source of symptoms is important in determining whether the basis of the expert testimony is sound or subject to doubt. In the context of the testimony of Dr. Morehouse, the possibility of unfair prejudice to the accused did not outweigh the probative value of the evidence. It was also unlikely that the members would be confused, based on the manner in which the evidence was adduced. In the trial counsel's response to the hearsay objection, he specifically stated that the evidence was not being offered for its truth. An instruction to the members immediately after admitting the evidence would have been proper, and preferred. There was no request for such an instruction made, in accordance with MRE 105, by the defense, and, in the absence of such a re-

quest, the failure to give the instruction is not plain error. We find no error in the admission of the statement of the roommate of the victim.

### Assignment of Error II

■ Assignment of Error II also arises from the testimony of Dr. Morehouse. At the conclusion of the examination of Dr. Morehouse by the trial counsel and the defense counsel, the members submitted several written questions. One question was:

In the absence of specific psychological testing as trained professional on scene what specific techniques used, if any, to determine veracity of [victim]'s narrative of events

Are you absolutely convinced in your professional capacity [victim]'s narrative, affect consistent with forced sexual assault.

Appellate Exhibit XXI. The defense objected, and the military judge conducted an Article 39(a) session with the members absent. After hearing argument, the military judge determined that the questions would be asked and, after the members returned, he asked Dr. Morehouse the following:

Military Judge: .... Now, Dr. Morehouse, in the absence of specific psychological testing, as a trained professional on the scene, what specific techniques did you use, if any, to determine the veracity of [the victim's] narrative of the events?

Witness: I interviewed her on at this point probably seventeen or eighteen different occasions. I checked to see if there were discrepancies in the description that she had given me of what happened. I would go back maybe a couple of months later, reviewing the same description of what happened, were there any inconsistencies in that description. I also evaluated her clinical presentation in terms of the constellation of symptoms that she had, and I evaluated whether or not there were any inconsistencies in her clinical presentation. I also was a member of a multi-discipline team that provides comments in team meetings, in daily planning sessions at times, in discussions, and I evaluated whether or not there was any behavior that had been observed or reported on the unit that was inconsistent with the clinical presentation that she gave to me in individual sessions and in group sessions.

.    .    .    .    .

Military Judge: Okay, second question. Dr. Morehouse, are you absolutely convinced, in your professional capacity, from [victim's] narrative of the events and from her affect when you saw her in the hospital that they are consistent with her being a victim of forced sexual assault?

Witness: Yes, I am. Her behavior and her narrative and her clinical presentation is consistent with being a victim of sexual assault.

ROT 593–594. Appellant cites *U.S. v. Harrison*, 31 M.J. 330 (CMA 1990), for the proposition that it is improper for an expert witness to testify that an alleged victim is telling the truth. There is no doubt that that proposition is correct. In this case, Dr. Morehouse did testify as to the symptoms that she considered and she unequivocally stated that the victim's narration, clinical presentation, and behavior were consistent with that of a sexual assault victim.

Based on the challenged testimony, taken in isolation, it might appear that the testimony of Dr. Morehouse was a not-so-subtle attempt to have the expert testify regarding the truthfulness of the victim. However, this testimony cannot, as the Government urges, be taken in isolation. Prior to the question by the member, the defense counsel, during cross-examination, stated to Dr. Morehouse: "You chose to accept what she was telling you as being truthful regarding the incident on November 13th; is that correct?" This followed a series of questions wherein the defense counsel brought out that Dr. Morehouse had not used psychological tests to determine deception. The member's question regarding the factors that Dr. Morehouse used to determine veracity in the absence of psychological tests was aimed at further exploring the area addressed by the defense counsel. The question, and Dr. Morehouse's answer, clarified the basis for her expert opinion, which had been challenged by the defense counsel. The follow-up question was a reiteration of her expert

opinion, given earlier, and was appropriate. Additionally, the military judge instructed the members, immediately after her testimony, that it was their responsibility to determine the truthfulness of the victim.

■ Dr. Morehouse's testimony, taken in context, did not usurp the members' function of assessing the victim's credibility, and it was not error to admit the testimony. Even if it was considered to be error, we conclude that, in the entire context of Dr. Morehouse's testimony, it would be harmless. Dr. Morehouse set forth the factors that she considered, she gave the information that she considered and where she obtained that information, and her evaluation was subjected to strenuous challenge on cross-examination. Under the circumstances, there was no error which prejudiced a substantial right of the Appellant.

### Assignment of Error IV

■ The final Assignment of Error centers on the testimony of the Coast Guard Special Agent who took a statement from the Appellant during the investigation of the case. At an Article 39(a) session, the trial counsel presented testimony from the agent that when he advised the Appellant that he was investigating allegations of attempted rape of the victim that the accused had initially responded that nothing had happened. He then testified that he next discussed alleged indecent assault allegations related to two other women and the Appellant responded that relations with one were consensual and the other was a whore. The agent testified that he then asked Appellant how the victim fit into the allegations and the Appellant reacted by jumping straight up and saying that he had to get out of the interview room. The agent testified that he left the room with the Appellant, that they walked around for a while, and that, after some time, they went back to the room and the Appellant gave a statement that portrayed the events as consensual. The trial counsel argued that the facts and circumstances surrounding the questioning of the Appellant were critical to a proper evaluation of the statement that the Appellant gave to the agent. The defense counsel argued that al-

lowing a reference to uncharged misconduct was improper. The military judge did the balancing required by MRE 403 and found that the probative value of the uncharged misconduct evidence concerning the circumstances surrounding the questioning of the Appellant was not substantially outweighed by the danger of unfair prejudice to the Appellant or possible confusion of the members. The military judge also limited the statement of the agent relating to what was said concerning the other allegations. He directed the agent to say "I asked him about allegations of sexual misconduct against him by two other women in the Venice area, and he denied any misconduct." ROT 804. The agent testified in that manner before the members.

During the defense case in chief, the Appellant testified to the circumstances surrounding the questioning. His rendition of the circumstances indicated that he was upset by the allegations of sexual assault on the victim and did not address the interaction of the other allegations. In the Government's rebuttal case, the trial counsel recalled the agent to further detail the circumstances. The military judge, relying on *U.S. v. Gaeta*, 14 M.J. 383 (CMA1983), and after again balancing the probative value against the danger of unfair prejudice, allowed the agent to testify more specifically about the circumstances. The agent's testimony, after relating that the Appellant had said that nothing had happened with the victim, was as follows:

Witness: We asked him—well, we told him we had allegations, or we told him about the allegations regarding—more in depth regarding Ms. [H] and Ms. [D].

. . . .

Trial Counsel: What happened when you indicated you were going to ask him about those allegations?

Witness: We asked him, "What about Ms. [H] . . . and Ms. [D]," and he said, "well, anything with Ms. [H] was consensual and [Ms. D] is a whore."

Trial Counsel: Then what happened after he said that?

Witness: We said, "Okay, given that"— "We'll give you that. How does [the vic-

tim] fit into this?" And at that point, he sat up in his—he straightened up in the chair in the interview room. He sat straight up and said, "I've got to get out of here, I've got to get out of here," as he paced back and forth in maybe a step in each direction.

ROT 2076—2077. At the conclusion of the agent's testimony, the military judge advised the members on the use of the evidence surrounding the questioning.

In *U.S. v. Gaeta, supra,* the defense had argued that a witness's account of the defendant's offer to smoke hashish with the witness should have been excluded as evidence of uncharged misconduct. The Court disagreed, noting that uncharged misconduct may be used to rebut an issue raised by the defense. The military judge in that case had limited consideration of the testimony to rebuttal of an issue raised by the defendant, i.e., that he was merely an innocent bystander. The Court held that the evidence was properly admitted.

In this case, it was also not error for the military judge to admit the challenged testimony offered during the government's rebuttal case. The military judge properly evaluated the evidence under MRE 403, and the evidence was admissible under *Gaeta* to rebut the defense portrayal of the interview.

### Conclusion

As a result of the foregoing analyses, we find Appellant's assignments of error to be without merit. Pursuant to Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact. Accordingly, the findings of guilty and sentence as approved below are affirmed.

Judge O'HARA concurs.

BAUM, Chief Judge (concurring in part and dissenting in part):

I concur with Judge Wiese as to Assignment of Errors V and VI. I also join in affirming appellant's conviction of a drunk and disorderly specification. The other four assignments all bear on the three indecent assault offenses which I would not affirm. Given the action I would take with respect to these offenses, the other assignments would be mooted and not addressed.

Pursuant to Article 66, UCMJ, this Court may affirm findings of guilty only after determining them to be correct in law and fact. In meeting that responsibility, we may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses. In so doing, we must be convinced of guilt beyond a reasonable doubt in order to affirm a conviction. *U.S. v. Turner,* 25 M.J. 324 (CMA1987). After applying those principles to this record, I am unable to conclude that the indecent assault findings are correct in fact, because I am not convinced beyond a reasonable doubt that appellant's actions lacked consent.

Unquestionably, the specific acts found by the court did occur. They are supported by the testimony of both appellant and the complainant. It is another matter, however, with regard to lack of consent, a necessary component of indecent assault. See Manual for Courts–Martial (MCM) 1995, Part IV, Paras. 54c(1)(a) & 63c. Appellant testified that the complainant was a consenting partner to his sexual advances; she says otherwise, that his acts were forcibly committed against her will. To me, her testimony in this regard is neither persuasive nor consistent with her conduct over the course of the day in question or for the weekend that followed.

She spent approximately eight hours with appellant during the day and evening on Friday and was observed by one witness at one point provocatively rubbing appellant's foot and leg with her foot. Upon her return to the station that evening, she registered no complaints with anyone. She saw appellant the next day and gave no sign that anything untoward had happened and on Monday, when her Chief asked about her car-shopping trip to New Orleans on Friday with appellant, she gave no hint that anything wrong had occurred. Instead, she misrepresented to him that she had indeed found a car to purchase and that appellant was going to take her to pick it up. Her actions do not strike me as those of a person who had been assaulted that Friday evening by appellant.

The court members also had trouble with the complainant's testimony, as reflected by their acquittals of the attempted rape and sodomy offenses. Ultimately they found appellant guilty of the lesser included offenses of indecent assault. I have difficulty reconciling their various findings with the portions of her testimony that they clearly rejected and the parts that they apparently believed. For example, in acquitting appellant of a sodomy offense, which she said took place in a car appellant was driving, the members obviously did not believe the complainant's testimony that appellant, while driving, physically forced her to perform an act of fellatio on him. I, too, find that testimony implausible. For me, it also had a negative influence on the credibility of her remaining testimony. It apparently did not have the same effect on the court members, however, despite their outright rejection of her account of this particular offense.

In finding that the complainant had been assaulted, the members may have believed she was particularly vulnerable to intimidation as a newly arrived junior member of the unit, possibly unable to stand up to the overtures of a petty officer. My conclusion differs. Although the alleged victim was a new member of the command, having reported directly from recruit training, she was not a young, inexperienced recruit. This was a 27–year old, married, former Army supply clerk who had served three years in the Army before joining the Coast Guard. As brought out at trial, on at least two other occasions she had shown no reluctance in making her will known and prevailing over male figures of authority.

At the time she enlisted in the Army, she successfully filed a complaint against her recruiter for uninvited sexual advances, and prior to the instant trial, she had no hesitation in standing her ground and terminating an examination by a defense psychiatrist, who testified that this was the first time he had experienced such assertiveness from someone he was examining. I find her strength of will, as demonstrated by these actions alone, to be inconsistent with the description of a kind of helplessness on the night in question. The evidence of record just does not convince me beyond a reasonable doubt that appellant's actions were committed without consent.

Having said that, I am left with the question whether appellant's actions nevertheless amount to the lesser included offense of indecent acts with another in violation of Article 134, UCMJ. See MCM 1995, Part IV, Paras. 63d(2) & 90. That offense does not require lack of consent because the assault element is not included. Otherwise, the remaining elements of indecent assault constitute the offense of indecent acts with another, if, in fact, the consensual acts were indecent.

The acts found by the court were that appellant put his hands on the complainant's breast, on her legs, and into her underwear with the intent to gratify his sexual desire and he touched her body with his penis. Acts such as these between a man and a woman who are adults are not specifically proscribed by the Uniform Code of Military Justice, if the acts are consensual. Under such circumstances, in a private setting they would not be considered indecent, normally. The presence of some other factor would be required to make them so. In that regard, the following quote from *U.S. v. Strode*, 43 M.J. 29, 31–32 (1995), presents such a factor:

> Again, in *United States v. Stocks*, 35 M.J. 366 (CMA 1992), we had occasion to consider under what circumstances sexual acts not otherwise specifically proscribed by the Uniform Code of Military Justice might constitute "indecent acts" founded upon the general article, Article 134. There, we concluded that acts amounting to "mere foreplay" do not constitute indecent acts if the resulting sexual intercourse in and of itself would not constitute an unlawful act. However, we were quick to qualify the opinion by reminding bench and bar that this holding was "logically and legally distinguishable from a situation in which the ultimate act of sexual copulation that would follow such foreplay is specifically proscribed in Article 120(b) or 125 of the Code." 35 M.J. at 367 (citations omitted).

While sexual intercourse in this case would not have violated either Article 120(b) or 125, UCMJ, I question whether the concept in

*Strode* and *Stocks* was intended to be limited solely to offenses in violation of those Articles. Logically, it seems to me that foreplay leading to any unlawful sex act should constitute an indecent act offense. If so, the acts in this case were indecent because both parties were married to other persons and their sexual intercourse would have been adultery in violation of Article 134, UCMJ. By appellant's own testimony, his actions were committed as a preliminary to such intercourse. All other elements having been satisfied, I would apply the foregoing rationale and affirm what I see as the lesser included offenses of indecent acts with another in violation of Article 134, UCMJ. I would set aside the indecent assault convictions, affirm the lesser included offenses, and reassess the sentence that was approved below.